**DUFFEY v. CROSS et al.**

No. 9391.

Court of Civil Appeals of Texas. Austin.

Oct. 27, 1943.

Rehearing Denied Nov. 17, 1943.

Stubbeman, McRae & Sealy, of Midland, for appellant.

Montague & Fannin, of Fort Worth, for appellee.

Gerald C. Mann, Atty. Gen., Cecil C. Rotsch, Asst. Atty. Gen., Chester E. Ollison, Asst. Atty. Gen., and Peter Maniscalco, Asst. Atty. Gen., amici curie.

McCLENDON, Chief Justice.

This appeal involves a proper construction of Art. 5367a, V.A.C.S. (Ch. 183, p. 560, Gen.L. 43rd Leg., Reg. Sess., 1933). In 1926 Cross, the surface owner of a tract of land, the mineral title to which was in the State, conveyed as agent of the State under the Relinquishment Act (Art. 5367, R.C.S.) a mineral lease thereon to Duffey, the recited consideration being in part a bonus of $1,000, the entire amount of which was paid by Duffey to Cross at the

time of the conveyance. The lease was in terms the same as that construed in the Navarro case. Navarro Oil Co. v. Cross, 139 Tex. 272, 162 S.W.2d 677, reversing Tex.Civ.App., 150 S.W.2d 117. The State brought this suit against Duffey alone for 1/2 of the bonus, on August 30, 1938, the last day upon which it could be brought within the five-year limitation period prescribed in Art. 5367a. September 24, 1940, the State filed an amended petition in which Cross was sued with Duffey. December 27, 1940, Cross filed a plea in abatement to the State's suit, predicated upon failure of the Land Commissioner to comply with alleged prerequisites of Art. 5367a regarding ascertainment of the amount and by whom due the State (Sec. 1), demand for payment thereof (Sec. 5), and giving the debtor an opportunity (90 days) to make affidavit of inability to pay in cash (Secs. 2 and 6). February 7, 1941, Duffey filed an amended answer in which he sought judgment over against Cross for any amount the State might recover against Duffey, asserting the three grounds of recovery over upheld in the Tippett case (Shell Petroleum Corp. v. Tippett, Tex.Civ.App., 103 S.W.2d 448, error refused, and expressly approved in Allison v. Stanolind Oil & Gas Co., 133 Tex. 540, 129 S.W.2d 267, and in the Navarro case): (1) Cross's warranty of title; (2) reimbursement for money paid Cross under mutual mistake (indemnity); and (3) subrogation to the State's right to recover against Cross. November 25, 1942, Cross filed his answer to the Duffey cross-action, in which he alleged (among other defenses) that Duffey was not liable to the State because of noncompliance with the above alleged prerequisites. He added a plea of limitation under Art. 5367a. A trial amendment to his cross-action was filed by Duffey, in which he alleged in substance: Duffey's residence was given as Fort Worth, Tarrant County, Texas, in the mineral lease; he never lived in Tarrant County, but lived then and always thereafter in Midland County, Texas; the State did not know and was not able to learn his address until long after suit was filed, and could not have located him in Tarrant County; there was no obligation on the State to ascertain his residence; and "if there might otherwise have been an obligation on the State to notify" him before filing suit, these facts excused such notice. Other matters of pleading, where deemed necessary, will be stated later.

The trial was to the court and resulted in judgment: (1) Sustaining Cross's plea in abatement and dismissing the State's suit as to him; (2) awarding recovery by the State against Duffey; and (3) denying recovery over against Cross by Duffey on his cross-action. Duffey alone has appealed.

■ Duffey's brief does not challenge the judgment against him in favor of the State, his only points being directed against the judgment denying him recovery over against Cross, and against the ruling of the court in sustaining Cross's plea in abatement. As to this latter ruling it is only necessary to point out that Duffey had no justiciable interest in that controversy, since his rights were not in any way prejudiced by that ruling. Only the State could challenge that ruling and it has not appealed.

■ There is no merit in the breach of warranty theory of recovery over since there was no allegation or proof that there had been an ouster or that there had been any development under the lease, or that it was still in force. Consequently, there was no showing of any lien, present or prospective, against any property conveyed by the mineral lease (and therefore protected by the warranty) which payment of the State's judgment would discharge.

Duffey's claim against Cross must therefore be sustained, if at all, upon his asserted right to indemnity or subrogation upon the theory of payment to Cross under mutual mistake.

Cross's theory of defense to Duffey's cross-action which we sustain, may be substantially stated as follows: Sec. 6 of Art. 5367a, construed in connection with Secs. 1, 2 and 5, constituted demand upon the debtor a condition precedent to the right of the State to sue; no demand was made upon Duffey, and no pleading averred or proof showed facts which would obviate the necessity for such demand; Duffey therefore had a valid defense to the suit of the State which he could have asserted by plea in abatement, upon the sustaining of which limitation would bar any further action; Duffey's failure to interpose this defense, under the circumstances already detailed, precluded his recovery over against Cross.

The State has filed an amicus curiae brief opposing this construction of Art. 5367a, asserting that its interest arises by reason of involvement of the question in other cases pending in trial courts.

The contentions of Duffey and the State in opposition to Cross's above theory of defense, stated likewise substantially, are: Sec. 6 of Art. 5367a does not prescribe any act on the part of any official as a condition precedent to suit; the requirement of notice, etc., was merely a privilege afforded the debtor, which was personal to him and which he might waive without affecting his right of indemnity. The State further suggests that to impose a duty upon the Land Commissioner and make performance of that duty a condition precedent to the right of the State to sue upon a preexisting debt due the school fund would violate "the spirit, if not the actual letter," of Art. VII, Sec. 4 of the State Constitution, Vernon's Ann.St.

We need not reiterate here the history of the Relinquishment Act and the various controversies that arose thereunder prior to adoption of Art. 5367a. See in this connection the emergency clause, section 8 to Ch. 23, p. 28, Gen.Laws, Reg. Sess., 42nd Leg. and the Tippett case. The purpose of Art. 5367a, passed at the next session of the Legislature after the Supreme Court's decision in the Empire case (Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265), was thus expressed in its emergency clause: "Sec. 10. The fact that the State does not know the amounts due to it from transactions arising under the so-called Relinquishment Act, nor by whom such indebtedness is due, and the further fact that such indebtedness was inadvertently incurred, and because of the present economic stress and strain the debtors should be allowed time in which to pay this indebtedness, constitutes an emergency * * *." Acts 1933, c. 183.

The pertinent portions of Art. 5367a read:

"Sec. 1. It shall be the duty of the Commissioner of the General Land Office to ascertain and determine as soon as practicable the amounts of bonus and rental money due the State and by whom due as a result of the execution of oil and gas leases by owners of the soil as agents of the State under the provisions of the Relinquishment Act. * * *

"Sec. 2. When the Land Commissioner has ascertained and determined the amounts due the State, and by whom due, as in Section 1 of this Act provided, in every case where he finds that the lessee in an oil and gas lease executed by a land owner under the terms and conditions of the Relinquishment Act is indebted to the State under the terms and provisions of said Relinquishment Act, and in every case where the Land Commissioner finds that a lessor, who executed an oil and gas lease under the terms and provisions of the Relinquishment Act, has received bonus and rental money under such lease and has failed to remit to the State that portion of such bonus and rental money due the State under the terms of said Relinquishment Act, all such indebtedness shall be paid to the State in cash; or if any such lessee or lessor is unable to pay said indebtedness in cash, such lessee or lessor shall file with the Land Commissioner an affidavit to the effect that such debtor is unable to pay such debt in cash. In addition to the affidavit of the debtor, the Land Commissioner may require such additional affidavits or substantiating evidence as he may deem sufficient to establish the true condition of the debtor's financial condition. Upon the filing of such affidavit and additional proof, if required, and the finding of the Land Commissioner that the affidavit speaks the truth, the debtor shall pay one-twentieth (1/20) of the debt found to be due in cash and make and execute an obligation to the State for the balance due which obligation shall provide for the payment of the balance in twenty (20) equal annual payments [bearing 4% interest], * * *.

"Sec. 3. If the courts should hold that the Legislature may not grant an extension of time in which to pay said debts to those unable to pay in cash without granting the same extension upon like terms and conditions to those who are able to pay, then and in that event, it is the intent and purpose of the Legislature in enacting this law that all debts due the State for bonus and rental money arising from the execution of any oil and gas lease under the provisions of the Relinquishment Act may be paid by the debtor executing the obligation as provided in Section 2 of this Act.

"Sec. 4. Nothing in this Act shall ever be construed as releasing any lien that the State may now have to secure the indebtedness due the State after the same has been ascertained and determined and the obligation executed, nor shall the liability of any party be changed.

"Sec. 5. When the amount of indebtedness mentioned in Section 1 of this Act has been ascertained and determined, the Land Commissioner shall make demand upon the debtor for the payment of the

amount due, and unless the debtor pays such obligation in cash within ninety (90) days or executes his obligation in lieu thereof as provided in Section 2 within such time, the Attorney General shall take such steps as in his opinion are necessary or proper for the immediate collection of such obligation.

"Sec. 6. No suit may be instituted or maintained by the State for the collection of any debt due the State for bonus and rental money because of the execution of any oil and gas lease under the provisions of the Relinquishment Act until the Land Commissioner has ascertained the amount of such debt and the debtor has had an opportunity to make affidavit of inability to pay, as provided in this Act; and providing further that no suit may be instituted or maintained for any debt or alleged debt due the State for bonus and rental money under the Relinquishment Act, unless such suit be instituted within five (5) years from and after the date this Act becomes effective, * * *."

The remaining Sections (7, 8 and 9) are not here involved.

The respective rights of Duffey and Cross, as they then existed, were not attempted to be abridged by Art. 5367a; nor could they have been so abridged. We assume, therefore, that the continuing right inhered in Duffey to pay the State the debt he owed it, and that upon such payment his right of indemnity against Cross would at once have accrued. Nor would his debt to Duffey have been affected by the subsequent accrual in favor of Cross of the limitation provision of the Act. He could not, however, hold Cross upon his right of indemnification by voluntary payment to the State after limitation had barred the debt as to himself. See Glasscock v. Hamilton, 62 Tex. 143; also A.L.L. Restatement of Restitution, pp. 351-2g.

Of course, if the suit were properly brought before the bar of limitation against Duffey, the bar of limitation thereafter accruing in favor of Cross against the State, would not defeat Duffey's right of indemnification against Cross.

The contention of Duffey and the State that the Act does not prescribe a condition precedent to bringing suit is predicated upon the wording of Sec. 6, and the well established principles: (1) that conditions precedent are not favored, 10

Tex.Jur., 344.; and (2) the rule of strict construction applied to "legislative grants of property rights and privileges." 36 Cyc. p. 1177. These, however, are rules of construction applied in determining the intent implicit in the language employed. They have no application where the language is plain and unambiguous, and susceptible only of the construction that a condition precedent was intended. The pertinent portions of Sec. 6 read: "No suit may be instituted or maintained by the State * * * until the Land Commissioner has ascertained the amount of such debt and the debtor has had an opportunity to make affidavit of inability to pay, as provided in this Act." The language "No suit may be instituted or maintained * * * until," is certainly not open to construction. It is clearly and unequivocally the language of a condition precedent, precluding bringing or maintainng a suit "until" the happening of the prescribed event. But it is contended that the Commissioner must needs have ascertained the amount due before the suit was filed and the debtor has had the opportunity to make the affidavit, etc., since he was charged as a matter of law with knowledge that he owed the debt and with knowledge of the provisions of the Act. This construction would render the provision meaningless. "Has had an opportunity to make affidavit * * *, as provided in this Act," necessarily refers to the explicit and mandatory provisions of Sec. 5 for "demand upon the debtor for the payment," after which the debtor is given 90 days in which to pay or make the affidavit. The opportunity as provided in the Act can have no other meaning than that afforded by the 90-day period after demand. It is urged that if the Legislature had intended to make demand, etc., a prerequisite to the right to bring suit, it would have been easy to so state in express language. We are not concerned with speculation as to why the Legislature employed the particular language to express its will. The Legislature having expressed its will in language which is clear and unambiguous, when applied to the subject matter dealt with, we would not be warranted in defeating that will by a construction rendering the language employed meaningless, merely because we might think more appropriate language could have been employed.

As to the contention that demand and 90 days "opportunity" within

642

which to make the affidavit as condition precedent to bringing suit, constituted a purely personal privilege to Duffey which he might waive: As a general proposition this might be conceded. But a different situation is presented here where (but for the suit) the bar of limitation had accrued and no institutable or maintainable suit had been brought within the limitation period. The record here shows that no demand was made prior to institution of the suit. Even if the mere filing of suit without service of citation might be held to constitute the demand (which we think clearly it would not); still no suit could be instituted until the expiration of the 90-day period after demand. Meantime the bar of the limitation period would accrue. The mere filing of the suit—non-institutable and non-maintainable as it was at the time—would not be effectual to toll the statute. Waiver under such circumstances, to be effectual, must necessarily include waiver of limitation. And since Duffey could not waive the statute to the prejudice of Cross, he could not so waive that which would be tantamount thereto—the non-performance of a condition precedent to bringing the suit, the bringing of which alone would toll the statute.

A somewhat analogous situation exists where one secondarily liable upon a debt, voluntarily pays it before maturity. He can not maintain suit against the principal debtor prior to maturity and his rights would be determined as of that date.

It is not necessary to consider whether circumstance might have existed which would obviate (excuse) the necessity for demand before suit. No circumstance of that character is either alleged in Duffey's above trial amendment or otherwise shown by the record.

 The State's suggestion that this construction of the statute would render it violative of the "spirit, if not the actual letter" of Const.Art. VII, Sec. 4, we think without merit. Clearly it was within the legislative power to prescribe a reasonable period of limitation within which suit might be brought upon its claims. This is not disputed. Nor is it contended that the Legislature could not grant relief to debtors by extending the time of payment. We think it also clear that the Legislature can prescribe reasonable conditions precedent to the bringing and maintaining of suits to enforce its claims. The fact that such conditions may require ac-

tion by state officials does not militate against their validity. Bringing the suit within the 5-year limitation period required official action by the Attorney General, just as making the demand required official action by the Land Commissioner. Failure to act on the part of either, whether from negligence or otherwise, might result in loss to the State. But that fact would not affect the validity of the statute or deprive the debtor of the relief it afforded. The situation is not analogous to one in which it is sought to hold the State liable in tort for the wrongful acts of its officials committed in the performance of their duties.

 There is one other phase of the case which we will consider. When Duffey was sued by the State there were several courses open to him with reference to his claim over against Cross:

1. To ignore Cross altogether and after satisfaction of the State's judgment seek indemnity from Cross. In that event the judgment would not be binding on Cross.

2. To notify Cross of the suit without demand that he defend it. In such case Cross would be bound by the judgment, except as to defenses which Duffey might negligently fail to interpose.

3. To notify Cross of the suit or implead him and demand that he defend the suit. In such case Cross would be bound by the judgment.

4. To implead Cross but deny him the right to defend the suit. In such case (the one we have here) Cross would not be bound by the judgment. The record shows: When Cross was sued by the State he interposed his plea in abatement asserting non-performance of the conditions precedent to bringing the suit, which plea was sustained. The same plea would have been good if interposed by Duffey. Cross also filed an answer, subject to his plea, asserting such failure as a bar to the State's suit against him. In answer to Duffey's cross-action, Cross pleaded the same failure as a defense to the cross-action. Duffey not only in effect denied Cross the right to defend the suit of the State, but in his trial amendment attempted to establish the invalidity of the defense which Cross asserted. This was tantamount to a confession of judgment by Duffey. Under these circumstances, Duffey is barred from any recovery against Cross, since the defense which the latter asserted and the validity of which Duffey contested, would,

as we hold above, have defeated the suit of the State.

These conclusions render immaterial other questions presented in the briefs.

The trial court's judgment is affirmed. Affirmed.