INEZ INGLISH, BY GUARDIAN, v. BERTIE JOHNSON ET AL.

Decided February 24, 1906.

1.—Donation to Charitable Uses—Failure of Uses—Equitable Jurisdiction.

Courts of equity exercise an original and inherent jurisdiction over charities. In the exercise of that jurisdiction, if the donor has made a gift in trust for a particular charitable purpose, and the purpose or use has failed, a court of equity will take the administration of the trust, and apply a fund, devoted to a particular charity, to a cognate purpose, to prevent a failure of justice and to carry into effect the intention of the donor when such intention can be discovered with reasonable probability.

2.—Same—Limitation Upon Uses.

A tract of land was donated to assist in the establishment and maintenance thereon of a school for the education of the female children of the city of Bonham. In the deed no intention is expressed to limit and restrict its use to the education of female children exclusively. It having become impracticable to maintain a separate school for females, and the trustee named in said deed being wholly unable to do so, it became the duty of a court of equity to take the administration of said donation, appoint a substitute trustee, and direct that such use of the property be made as would most nearly conform to the specified intention of the donor.

Appeal from the District Court of Fannin. Tried below before Hon. Ben. H. Denton.

*Meade & McGrady,* for appellant.—To divert the terms of a gift for educating female children to that of educating both sexes without limit as to age or any other restriction, is such a radical change that a court of equity is not authorized to decree. Pierce v. Weaver, 65 Texas, 44; Stratton v. Physio, etc., 14 Am. St. Rep., 442; Curling v. Curling, 33

Am. Dec., 475 and note; St. James, etc., v. Shelby, 83 Am. St. Rep., 553.

*Thurmond & Steger* and *Richard B. Semple,* for appellees.—The terms of the original donation did not restrict the use of the premises in controversy exclusively to the education of female children.

The court did not err in finding that it was impracticable for the premises to be devoted exclusively to the maintenance of a female school thereon. Simmons Hardware Co. v. Kaufman & Runge, 77 Texas, 137.

Where a donation is made to a trustee to be administered for the education of female children at a time when it is practicable to maintain an exclusively female school in accordance therewith and many years afterwards the public free school laws of the State have been fundamentally changed, the building in which said female school is to be maintained is decaying and unfit for occupation and there are no funds to rebuild or repair said building and it is no longer practicable to maintain an exclusively female school on said premises, a court of equity in such a case has the power and it is its duty (if the same can be done) to frame a new scheme whereby the intention of the donors of said charity may be carried into effect as near as may be, provided it can be done consistently with the laws of the land. Pierce v. Weaver, 65 Texas, 44; Bell County v. Alexander, 22 Texas, 350; 2 Perry on Trusts, secs. 723, 724, 725, 694; Johnson v. Johnson, 36 Am. St. Rep., 108; Jackson v. Phillips, 14 Allen, 539, 580; Russell v. Allen, 107 U. S., 163, 166; Hoeffer v. Clogan, 63 Am. St. Rep., 254; Grant v. Saunders, 100 Am. St. Rep., 312.

TALBOT, ASSOCIATE JUSTICE.—Plaintiffs, Bertie Johnson and others, all females and minors within the scholastic age under the laws of this State, brought this suit by their next friend in the District Court of Fannin County against Inez Inglish, a minor, and other heirs of Bailey Inglish, deceased, Constantine Lodge No. 13 of Free and Accepted Masons, a corporation organized for benevolent purposes, the city of Bonham and the board of trustees of the public schools of said city, to have decreed out of said lodge and vested in said city and school trustees for public free school purposes, a certain block of land in said city, of four acres, originally conveyed by Bailey Inglish to said lodge in trust for the purpose of maintaining a female school thereon for the benefit of the female children of Bonham and neighboring vicinity.

The material allegations of plaintiffs' petition are in substance: That about January 24, 1856, a great many citizens of Bonham agreed among themselves to subscribe a common fund to secure suitable ground and buildings for establishing and maintaining within said city a female institute wherein the female children of said town and vicinity could be properly educated; that thereafter sufficient funds were subscribed by them for that purpose and on said date Bailey Inglish donated to said enterprise as his part a block of four acres in said city, describing it by deed whereby he conveyed said land to said Constantine Lodge to hold same in trust for said citizens for said use and purposes; that the consideration recited in said deed is $400, paid, when in fact said

deed was a donation by said Bailey Inglish to said charity. That the lodge accepted said trust and administered the same, save at certain intervals, by securing to be taught on said premises a female school until recent years, but that it is now become impracticable by reason of the dilapidated and dangerous condition of the building and of the inability of the lodge to repair the same for want of funds to longer maintain a female school thereon; that no one is willing to repair said building, nor is there anyone willing to undertake the teaching of a strictly female school in said building; that said trustee will be compelled to abandon said property for school purposes; that said lodge has passed a resolution relinquishing its trusteeship, and said city and school trustees have expressed a willingness to accept said property and erect thereon valuable and suitable school buildings and devote said premises to public free school purposes of said city.

The case was tried by the court without a jury and judgment rendered for appellees, in substance, as prayed for in their petition. Inez Inglish, by her guardian ad litem, excepted to this judgment and appealed.

The court filed conclusions of fact which are adopted by this court, as follows:

"I find that plaintiffs Bertie Johnson, Alice Preston, Orry Kincaid, Nancy Lee Bramlette, Ruth Bramlette, Annie Lee Russell, Eleanor Bradford, Joe Ida Moss, Aubyn Lyday, Birdie Lee, Mary Eva Barron, Jean Scarborough and Margaret Scarborough are all minors within the scholastic age under the school laws of Texas and are female inhabitants of the city of Bonham and vicinity; that Constantine Lodge No. 13 of Free and Accepted Masons is a fraternal organization and was incorporated under the laws of Texas on April 29, 1846, and has been such corporation since that date; that it is strictly a benevolent association of individuals residing within the city of Bonham and its vicinity and is vested with authority to hold property, real or personal, only for charitable purposes.

"2. I find that on the 24th day of January, 1856, Bailey Inglish conveyed to said Masonic Lodge 4 acres of land situated in the town of Bonham one half mile north of the courthouse in said town and which is more fully described in plaintiffs' petition filed in this cause; that said conveyance was a deed which was recorded on February 29, 1856, on page 378, Book "1" of records of Deeds of Fannin County, Texas; that said deed recites that in consideration of $400 to said Inglish paid by said lodge he conveyed said property to said lodge, to have and to hold unto it in trust for the stockholders of the Bonham Female Institute.

"3. I find that prior to January 24, 1856, a great many citizens of the city of Bonham subscribed a large sum of money for the purpose of establishing a female institute on said premises and that said Bailey Inglish was one of said citizens and that said citizens, including said Inglish, subscribed a sufficient amount of money to erect on said premises a school building for the purpose of educating the female children of said town and vicinity therein; that said deed was made in connection with said donation; that thereafter said building was erected and a school was established on said premises for educating said female chil-

dren, which continued in operation until some time near the year 1859, when said building was destroyed by fire; that during this period said trust was administered by said lodge in accordance with said uses and purposes to which said property had been dedicated as aforesaid; that when said building was burned a large number of the citizens of Bonham, including most of the original donors of said charity, again subscribed another fund amounting in this instance to about $6,000, with which was erected a new brick building which is now standing upon said premises; that said new donation was given for the purpose of carrying out said trust; that said lodge continued to administer said trust until April 17, 1868, when they conveyed the property to Sarah Carlton by deed in which the title was attempted to be conveyed to her in fee simple; that on December 27, 1870, said Sarah Carlton, joined by her husband, Chas. Carlton, attempted to convey by deed to F. J. Abernathy an absolute title to one-third of said property in fee simple; that on March 4, 1871, Samuel A. Roberts, who was one of the original donors of said charity, with many others of the said donors, brought suit in this court to cancel said deeds and restore said property to its original trust and uses above set forth; that on September 16, 1874, by decree of this court entered in said cause said property was restored to said lodge which was ordered to hold and administer said charity as stated above, that is, for maintaining a female school for the citizens of Bonham and vicinity; that said judgment on appeal to our Supreme Court of Texas was affirmed.

"4. I find that in 1856 when said charity was first organized the city of Bonham and vicinity had no public building in which a female school could be taught; that at that date the public free schools of Texas provided only for teaching indigent children at public expense; that generally in private schools the sexes were taught separate and apart from each other; that since the adoption of the public free school system of Texas since the war between the States the public free schools of Texas are taught without separating the sexes; that the city of Bonham has assumed control of its public schools within its limits in accordance with chapter 16, of title 86 of the Revised Statutes of Texas, and has had such charge of its schools for more than 10 years; that continuously since said city took charge of said schools as aforesaid the said schools have been properly managed and conducted by efficient teachers with large and commodious school buildings.

"5. I find that there is but one building on the premises in controversy, which is a brick building erected in 1859; that said building is in a very dilapidated condition, with its walls in part breaking away, its doors and windows old and out of repair and the whole building unfitted for teaching school children; that it is impossible and dangerous to attempt to teach a female school in said building in its present condition; that said lodge is without property or funds to repair said building or to maintain a female school therein; that said lodge has made repeated efforts to carry out the trust conferred upon it by said donors by attempting to teach in said building a school devoted to teaching female scholars, but without success.

"6. I find that said Constantine Lodge No. 13 has by resolution of its order decided that it is impracticable for them to further administer

said charity as set forth above for the reasons stated above, and has expressed a willingness for this court to appoint a trustee in its stead to execute said charity as far as it is practicable under the present condition of things; that the board of aldermen and the board of school trustees of the city of Bonham have by their answer in this cause expressed a willingness to take charge of said property and execute said trust in accordance with the terms thereof so far as the same can be done under the general laws of the State of Texas and to place said property in such repair and condition that the female children of Bonham can be educated therein with the male children of said city.

"7.   I find that according to the terms of the original trust as established by the original donors of said charity that there is nothing therein which prohibits the teaching of male children on said premises."

Appellant's propositions under her several assignments of error may be summarized as follows:   (1) To divert the terms of a gift for educating females, to that of educating both sexes without limit as to age, is such a radical change, a court of equity is not authorized to enforce it;   (2) the court erred in finding that it was impracticable for the premises donated to be devoted exclusively to the maintenance of a female school thereon, because unsupported by the evidence, in that it does not appear but that a portion of the premises could be sold and the proceeds used in the erection of a suitable building on that remaining to be devoted to a female school exclusively; (3) the court erred in not holding void the original donation and deed of gift and in not decreeing the property in controversy to the heirs of Bailey Inglish, because the same was for the benefit of a public charity, and said charity so designated is too indefinite and uncertain to be legal or binding upon the donor.

The solution of the question respecting the validity of bequest by will and other conveyances of property for charitable purposes, has usually been fraught with difficulty and has resulted in the expression of a contrariety of opinion and conflict in the authorities upon the subject. However, it seems to be settled that courts of equity, where not prohibited by statute, exercise an original and inherent jurisdiction in equity over charities, and apply to them the rules of equity, together with such other rules applicable to charity uses as courts of equity may exercise under the constitutions and laws of the several States.   In the exercise of this jurisdiction, if it appears that the donor has made a gift in trust for a particular charitable purpose and appoints no trustee, or the trustee appointed by him is incapable of taking the gift and administering the trust, or if trustees are named or appointed who are not *in esse*, but are to come into existence thereafter, as by an act of incorporation, courts of equity can establish the charity; for a legal and valid trust will not be allowed by such courts to fail for the want of a trustee.   So, too, where the execution of the trust is to be by a trustee, with the objects thereof pointed out, the court will take the administration of the trust, and in the strict discharge of their judicial duty may apply a fund devoted to a particular charity to a cognate purpose to prevent a failure of justice and to carry into effect the intention of the donor as manifested by the written instrument when such intention can be discovered with reasonable probability.   In such cases it becomes

the duty of the court to construe the written instrument in order to ascertain the intention of the parties thereto and to carry such intention into effect as near as may be, when it can be done consistently with the law of the land. And it is even said that "if the purposes of a charity named in a will fail, and there are no objects to which to apply the funds, the court must read the whole will in order to determine whether the charitable intention of the testator has come to an end, and that the fund must revert to the heir or personal representative; or whether a probable intention can be gathered from the instrument that in the event which has happened, the donor intended that his gift should be applied *cy pres* the original purpose." (Attorney Gen'l v. Pyle, 1 Atkyns Chan. Rep., 435; Perry on Trust, 2 col., secs. 723, 724; Jackson v. Phillips, 14 Allen, 574.)

Again, a fund given to trustees for a specified charitable purpose lawful and valid at the death of the testator or donor, if no intention is expressed to limit it to a particular institution or mode of application, and afterwards the scheme becomes impracticable, having once vested as a charity, is to be applied by a court of chancery, in the exercise of its jurisdiction in equity, as near the donor's particular intention as possible. This jurisdiction is not founded in this country on the statute of 43 Elizabeth, but upon the common law; and yet we understand that the application of the *cy pres* doctrine in the exercise of a general equity jurisdiction is favored here. (Vidal v. Girard, 2 How. (U. S.), 128; Perin v. Carey, 24 How. (U. S.), 465; Burbank v. Whitney, 24 Pick., 146; Preacher's Aid Assn. v. Rich, 45 Me., 552; Chambers v. City of St. Louis, 29 Mo., 543.)

Applying the foregoing rule and principles to the facts of this case, we think the judgment of the court below should be affirmed. It may be conceded that the particular object of the donor in making the gift of the land involved in this controversy, was to assist in the establishment and maintenance thereon of a school for the education of the female children of the city of Bonham, but there is no pretense, and it is not a fact, that by the terms of the conveyance creating the donation, an intention to limit and restrict its use to the education of the female children of said city exclusively, is expressed. Without such expressed intention, the scheme or purpose of maintaining a separate school for females having become impracticable, and the trustee appointed to administer the trust being wholly unable to do so, it became the duty of the District Court, as a court of equity, to take the administration thereof, appoint a substitute trustee, and direct that such use of the property donated be made as will most nearly conform to the particular or specified intention of the donor to the end that a total failure of the trust should not ensue. That it had become impracticable to use the property for the education of the female children of the city of Bonham exclusively, and that the Masonic Lodge, to which the administration of the trust had been confided, was incapable, because of its inability to raise funds for the purpose and the changed conditions affecting the methods and means of conducting and maintaining schools in this State, is placed beyond controversy by the undisputed evidence and conclusions of the trial court. The trustee lodge is a fraternal organization which it seems has no authority to

raise funds, except for the purpose of its creation. The school building, which had been erected many years ago upon the land, is badly out of repair, the bricks in it breaking and the walls separating; it is in such a general dilapidated and unsafe condition further use of it would endanger the lives of the children. The lodge has no funds and can raise none with which to repair the building and further donations for that purpose can not be secured from private sources. It is further shown that the city of Bonham had adopted the free school system of this State, and since such adoption it was practically impossible to procure teachers to take charge of the land and the improvements thereon, in their dangerous condition, and undertake the maintenance therein of a private female school. That repeated efforts had been made to maintain such school there, but without success. The said city of Bonham and its board of school trustees, by answers filed in this suit, not only signified their willingness to do so, but agreed that if the property was placed under their control to repair it and put it in suitable condition for, and use it in, the education of the male and female children of said city. The Masonic Lodge answered that it could no longer maintain a female school on said premises and prayed to be relieved of the trusteeship conferred upon it by Bailey Inglish, and that the property be turned over to the school trustees of Bonham. Under these circumstances it occurs to us that the trial court, in the exercise of its jurisdiction in equity, did but its plain and imperative duty in rendering the decree from which this appeal is prosecuted. That the facts called for the appointment of a new trustee and the formulation of a scheme by the court to carry out the general intent of the donor, Inglish, and thereby prevent a failure of the charity, seems clear. That the scheme adopted was a wise one and conformed as near as possible to the specified intention of the said donor does not admit of a doubt. This particular intention was to establish and maintain within the limits of the city of Bonham a female school. The scheme or plan suggested by the city of Bonham and its board of school trustees, and adopted by the court, effectuates, or makes reasonably sure the accomplishment of that purpose although male children may be taught in the same building erected upon said land. As said before, no intention is expressed to limit the use of the donation to a school for female children alone, and it is not believed that the authorization of a mixed school by the judgment of the court, if necessary, as it was, to prevent the loss of the charity to the beneficiaries, was such a diversion of the gift as deprived the court of the power to make it. Touching the right to have the property used by the beneficiaries under the management of the city of Bonham, as well perhaps upon other points raised, the case of Pierce v. Weaver, 65 Texas, 44, is perhaps in point. In that case the donation was made for the purpose of maintaining a school for the education of the white youths of Hopkins County. In construing the trust Judge Stayton said: "We see no reason to doubt that the property under the terms of the donation might be used for a public free school under the general provisions of the law, nor do we see reason to doubt that it may be used by the beneficiaries under the management of the city, if it elect to

manage the public free schools therein under the laws and section 10, article 11 of the Constitution." As said by the counsel for appellees, in the case at bar, the beneficiaries of the trust are plaintiffs and seek to secure the benefit of the donation here made in the only way that is available to them.

The contention of appellant, to the effect that the original donation was void because the same was made "for the benefit of a public charity and said charity is too indefinite and uncertain to be administered by a court," is not supported by the record and should not be sustained. The beneficiaries of the charity are distinctly named in the instrument by which the donation was made; a trustee was appointed to carry out the intention of the donor and the uses and purposes to which the gift was to be applied is clearly and definitely stated. Carleton v. Roberts, 1 Posey Unreported Cases, 587. A very different state of facts existed in the case of Nolte v. Meyer, 79 Texas, 351, cited by appellant in support of this contention. The judgment is affirmed.

*Affirmed.*

Writ of error refused.