**MORSE et al. v. FIRST NAT. BANK OF GALVESTON et al.**

No. 11773.

Court of Civil Appeals of Texas. Galveston.

May 2, 1946.

Rehearing Denied May 23, 1946.

Charles J. Stubbs and Markwell & Stubbs, all of Galveston, for appellants.

Levy & Levy, of Galveston, for appellee Stewart Hunter Evans.

Williams & Thornton, of Galveston, for appellee First Nat. Bank.

GRAVES, Justice.

This appeal, in a tripartite cause (the three parties being named in the court's decree, quoted infra), entitled "In the Matter of the Estate of Madie E. Hanscom, Deceased", in the 56th District Court of Galveston County, is from a judgment of that court, sitting without a jury in material substance to this effect:

(1) Uncontrovertedly declaring appellants to have been the only heirs at law, and the only persons entitled to share in the estate of Mrs. Hanscom, had she died intestate;

(2) Denying the application of appellants to annul and declare void, as having lapsed because of the prior death to that of the testatrix of Canon John Hourigan, this residuary clause in the will of Mrs. Hanscom, to-wit: " * * * it is my will and desire that the remaining sum in the care of my Executors be converted into a 'Hanscom Fund for Charities', and sent to Canon John Hourigan of Jersey, Channel Islands, to be distributed according to his discrimination, among the Island's poor * * *."

(3) Overruling appellants' objections to the provisions and directions of such will, and ordering them to be confirmed and executed in all matters, decreeing that appellants take nothing by their suit.

No findings of fact, nor conclusions of law, were otherwise requested or filed, but the court's judgment contained, in substance, these recitations:

"Came (1) the applicants (appellants on appeal), (2) the defendant or respondent, The First National Bank of Galveston, Independent Executor and Trustee, and (3) the intervenor, Stewart Hunter Evans, as British Vice-Consul in behalf of the Poor of the Island of Jersey; and the court having heard the pleadings, evidence, and argument, it appearing to the Court that no material injury to the interest of the applicants, or any of them, will be occasioned by executing the provisions and directions of the Will complained of, and that such provisions and directions are legal; and the

Court finding and concluding· from the law and the evidence, (1) that the bequest to Canon John Hourigan, though lapsing because he predeceased the testatrix, passed under the residuary clause of the Madie E. Hanscom Will and became a part of the charitable trust fund created and provided thereby as the 'Hanscom Fund for Charities'; (2) that the language of the Hanscom Will expresses a clear and definite desire and intent that the residue of the Estate should be converted into a fund to be known as the 'Hanscom Fund for Charities' and be distributed among the poor of the Island of Jersey; (3) that said will created a valid and enforceable public charitable trust; (4) that the direction in said Will that the fund should be sent to Canon John Hourigan (who predeceased the testatrix) and distributed among the Island's poor according to his discrimination (discretion), does not render uncertain the object of testatrix's bounty, or otherwise render the bequest invalid or unenforceable; (5) that said trust did not fail because the named Trustee, Canon John Hourigan, predeceased the testatrix; and (6) that said trust is not void because those named to benefit thereby are aliens; —it is accordingly the opinion of the Court that the objections of applicants be overruled, and that the provisions and directions objected to be confirmed and executed."

The will of Mrs. Hanscom, in haec verba, was this:

"I, Madie E. Hanscom, of Galveston, Texas, do make this my last will and testament, and I make the Security Trust Co., of Galveston, Texas, with my Cousin Jesse C. Dickie, of Amarillo, Texas, joint independent executors of my estate, without bond, said estate comprising properties and money deposits in Galveston, Texas, and my holdings in money and bonds, in Paris, France. It is my will that no other action be taken in the County Court, in the administration of my estate, than to prove and record this will, and return an inventory and appraisement of my estate. I nominate and appoint said Security Co., of which John W. Hopkins is now Secretary and Treasurer, and Jesse C. Dickie, of Amarillo, Texas, in my will, and hereby invest them with all powers, rights, and privileges in said will.

"I give and bequeath to Canon John Hourigan, of Jersey, Channel Islands, the sum of three (3) thousand dollars, to be dispensed according to his judgment.

"I give and bequeath to my nephew, Charles W. Morse, of Galveston, Texas, the sum of 3 thousand dollars.

"To my nephew, Arthur S. Morse, of Galveston, Texas I give the sum of 1 thousand dollars.

"To my nephew, Brandon M. Mathews, and Frank Mathews, of Houston, 5 hundred dollars, each.

"I give and bequeath the rest and residue of my estate to the said Security Trust Co., and Jesse C. Dickie, in trust for the uses and benefits of the following: The whole of my estate to be invested except the special legacies, and the income paid to my sister, Mrs. Fannie Johnson Reid, of Houston, Texas, during her life, and at her death, after investing 5 hundred dollars, the income of which, to be used by Executors to care for my lot in the Episcopal Cemetery, and the R. D. Johnson lot in the Catholic Cemetery, it is my will and desire that the remaining sum in the care of my executors, be converted into a 'Hanscom Fund for Charities', and sent to Canon John Hourigan of Jersey, Channel Islands, to be distributed according to his discrimination, among the Island's poor, and in the event of my death in Europe, my wish is to be buried in the Island of Jersey.

"Signed by my hand this 22nd day of January, 1926, at Galveston, Texas.

"Madie E. Hanscom"

In inveighing here against the judgment so adverse to them below, appellants, with commendable discrimination, make but a single presentment, which, in boiled down substance, they state this way: "Mrs. Hanscom's heirs (appellants here) take the position that Mrs. Hanscom, by her will, clearly expressed an affirmative intention to vest in Canon Hourigan personally the discriminatory power to administer these charities and distribute this fund among the poor of his island as he, personally, might see fit; that this especial

trust and confidence in Father Hourigan, uncontrolled save by his conscience alone, was a power personal in character; that, Father Hourigan being dead and unable to exercise his personal discrimination in the exercise of the power and in the distribution of the fund, it is beyond the constitutional judicial power of a Texas court to vest this personal power in some other person to be named by the court as a substitute for Canon Hourigan; that to do so would do violence to the clearly expressed intention of the testatrix, and would amount to the exercise of the royal prerogative, under the doctrine of parens patriae (which exists in England, but not in Texas); and that the bequest in question has lapsed, and the residue remaining in the estate should go to those whom the court has found to be the heirs of Mrs. Hanscom."

This one contention that the residuary bequest had lapsed, solely because of Canon Hourigan's prior death to that of the testatrix, and not upon any insistence that the will had been otherwise invalid, or even uncertain, or ambiguous—to the contrary conceding that it had potentially created a valid trust in clear terms—but urging, nevertheless, that it had become impossible of execution by his death, because it had been personal to Father Hourigan alone, they support by the citation of these, among other, authorities: Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223; Baptist Association v. Hart's Executors, 4 Wheat. 1, 4 L.Ed. 499; Beckman v. Bonsor, 23 N.Y. 298, 80 Am.Dec. 269; In re Chellew's Estate, 127 Wash. 382, 389, 221 P. 3; Fontain v. Ravenel, 17 How. 369, 58 U.S. 369, 15 L.Ed. 80; Frost National Bank v. Boyd, Tex.Civ.App., 188 S.W.2d 199; Gambell v. Trippe, 75 Md. 252, 23 A. 461, 15 L.R.A. 235, 32 Am.St.Rep. 388; Gidley v. Lovenberg, 35 Tex.Civ.App. 203, 79 S.W. 831; Hadley v. Forsee, 203 Mo. 418, 101 S.W. 59, 14 L.R.A.,N.S., 49; In re Estate of George W. Grant, Deceased, 93 Tex. 68, 53 S.W. 372; Langley v. Harris, 23 Tex. 564, 565; Powers v. First National Bank of Corsicana, Tex.Civ.App., 137 S.W.2d 839, affirmed 138 Tex. 604, 161 S.W.2d 273; Tilden v. Green, 130 N.Y. 29, 28 N.E. 880, 14 L.R.A. 33, 27 Am.St. Rep. 487; Vidal v. Girard's Executors, 2 How. 127, 11 L.Ed. 205; Article II, Constitution of Texas, Vernon's Ann.St.; Article V, Section 1, Constitution of Texas; Article 7172, Revised Civil Statutes of Texas 1925.

This court is unable to see eye to eye with appellants, concluding rather that the trial court correctly determined the other way the only issue of law involved.

It may be, as appellants argue, that no Texas appellate court has directly decided, upon the legal equivalent of the same state of facts, this precise question; but it is thought that our courts generally have laid down rules, from persuasively analogous situations, as controlling inquiries so near to the one here involved that the trial court's holding is a legitimate legal inference therefrom; in other words, under our system, this bequest having been a valid one outstandingly inherent in a discriminative and unambiguous will in its entirety, should not be held to have failed, merely because the person named by the testatrix to distribute the property to a specifically designated public charity predeceased the testatrix; but that, on the contrary, the trust was not a personal one in the sense that only the individual person named could administer it, but a clearly specified one for a public charity, hence should be upheld under the broad principles of equity jurisprudence; Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273; Gidley v. Lovenberg, 35 Tex.Civ.App. 203, 79 S.W. 831, writ of error refused; Bell County v. Alexander, 22 Tex. 350, 351, 73 Am.Dec. 268; Paschal v. Acklin, 27 Tex. 173, 174; Inglish v. Johnson, 42 Tex.Civ.App. 118, 95 S.W. 558, writ of error refused; Lightfoot v. Poindexter, Tex.Civ.App., 199 S.W. 1152, writ of error refused; Frost National Bank v. Boyd, Tex.Civ.App., 188 S.W.2d 199; Grant v. Saunders, 121 Iowa 80, 95 N.W. 411, 100 Am.St.Rep. 310; Klumpert v. Vrieland, 142 Iowa 434, 121 N.W. 34; Hagen v. Sacrison, 19 N.D. 160, 123 N.W. 518, 26 L.R.A.,N.S., 724; Restatement of the Law of Trusts, Vol. 2, Secs. 369, 375, 396, 397, page 1190; Bogert on Trusts and Trustees, Vol. 2, §§ 328, 362,

366, 371, 373, pp. 1048 to 1050, 1093, 1117, 1138, 1156 to 1161; 9 Tex.Jur., Charities, Secs. 5, 6, 8, 11; 14 C.J.S., Charities, §§ 16, 27, 40; 10 Am.Jur., Secs. 83 and 94; 5 Ruling Case Law, Sec. 33, page 310; American and English Ann.Cases, Vol. 20, page 866.

As indicated, indeed as the clear-cut terms of Mrs. Hanscom's will would seem to make plainly evident, there was no background upon which to predicate any doctrine of parens patriae, to which the appellants so liken the trial court's holdings; that is, there was no room left in this instance for the application of that theory, or the exercise of any such power, if it exists in this country; because, the testatrix herself, in no uncertain terms in her own language, plainly expressed her intention to establish a charitable trust for the poor of the Island of Jersey, and speci-fied a medium through which such trust might be administered, thereby exercising her own prerogative, and leaving nothing but ministerial acts for her executors and trustees to perform in carrying out her wishes.

Not only so, but in doing that, when this court looks—as is its bounden duty in construing her will—" 'beyond mere gramatical form [of it], to * * * the internal evidence of [its maker's inten-tions' Neely v. Brogden, Tex.Civ.App., 239 S.W. 192, 194", it as an entirety falls clearly within the principles declared by our Supreme Court in its most recent declaration of the rules of law in Texas governing the construction and application of public and charity trusts—to-wit, Pow-ers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, 283, supra.

That deliverance—to say nothing fur-ther about the wide array of other author-ities cited supra, by either of the parties hereto—in this court's opinion, controls the disposition of this appeal adversely to appellants' sole ground of attack upon the effectiveness of this will.

In other words, upon analogous facts on that feature, the Supreme Court, in plain purport, holds that a will much less clearly definitive of the testator's in-tention in that regard than Mrs. Han-scom's created not only a public as dis-tinguished from a private trust for char-ity, but, in paragraph 31, page 283 of 161 S.W.2d, expressly declared that such a trust is not a personal one in the trustee, and void; but, as was the precise situation here, because "the beneficiary classes be-ing specified and all of them being chari-ties", the result was the creation of a public charity only, that was neither void nor personal in the trustee; nor did it lapse, because the selection of the indi-vidual beneficiaries thereunder was ex-pressly left to the discretion of the trustee named—Canon Hourigan in this instance.

The holding in the powers case further determines authoritatively that such a public trust as this one will not lapse through failure of an enforcement medium; but that, on the contrary, our courts of equity not only have the power but the duty to enforce it as such a public charity trust in the public interest—not on the English theory of the sovereignty's acting as parens patriae, but because such a function belongs to our courts of equity under the constitution and laws of this State. Paragraphs 34 and 35, page 284 of 161 S.W.2d, and cited authorities.

Finally that deliverance, after quoting Gidley v. Lovenberg, 35 Tex.Civ.App. 203, 79 S.W. at page 835, supra, also declares it to be not only within the power but the disposition of our courts of equity to en-force such public charitable trusts, despite much more indefiniteness and uncertainty in their provisions than exists in this in-stance.

On the very point at issue here—that this trust lapsed when Father Houri-gan died—that court thus declared the law: "Likewise, if the trustee named passes out of existence for any reason, or if it fails or refuses to act, the same court will name another trustee. The trust will not be suffered to lapse for want of a trustee. See Inglish v. Johnson, 42 Tex. Civ.App. 118, 95 S.W. 558, error refused; Grant v. Saunders, supra; 14 C.J.S., Charities, § 49; 5 R.C.L. sec. 33. After all, a public charity trust having been cre-ated by Mrs. Hofstetter, that some diffi-culties may develop from time to time in

its administration is not a matter about which the plaintiffs need concern themselves."

In the cause at bar appellants, under the principles and holdings cited, cannot be legally aggrieved; nor can any difficulty which might arise in administering this trust in any way affect them, because they neither ` claim nor have they shown any title or interest in the subject matter whatever, if Father Hourigan's prior death to that of Mrs. Hanscom did not completely nullify the residuary clause of her will.

The admirable presentments of appellants, especially their forthright concession that the will set up a valid trust for public charity, which so persisted as such until Father Hourigan died before the testatrix did, has relieved this court of the duty of considering other implications in the will itself, or arising out of the cause as litigated, hence further discussion is deemed unnecessary. The trial court's judgment will be affirmed.

Affirmed.