Lawrence **WOOTEN** et al., Appellants,

v.

Gerald **FITZ–GERALD** et al., Appellees.

No. 5976.

Court of Civil Appeals of Texas.

El Paso.

April 2, 1969.

Rehearing Denied May 14, 1969.

Fender & Clinton, Mexia, Joseph D. Jamail and John Gano, Houston, Warren Burnett, Odessa, for appellants.

Kerr, Fitz-Gerald & Kerr, Midland, Crawford C. Martin, Atty. Gen., of Texas, Austin, for appellees.

## OPINION

FRASER, Chief Justice.

In their brief, appellants set forth a statement of the case as follows:

The appellee Gerald Fitz-Gerald, brought this suit for construction and interpretation of the Will of Jessie Wallace, who died October 12, 1964, asserting there were "difficult and doubtful questions" respecting the provisions of the purported will, and asserting that the meaning and effect of the provisions were "not clearly understood". Said appellee, Gerald Fitz-Gerald, as successor administrator with the will annexed, prayed the court to "decide, determine and declare that a valid public charitable trust was created"; to define the objects and persons who were beneficiaries; to determine what portion of the estate of Jessie Wallace should be allocated to said trust, and to appoint a trustee.

Appellants were defendants therein, they being the living relatives and heirs of Jessie Wallace, deceased.

The appellee, Crawford Martin, Attorney General, was made a party in that "the va-

lidity" of a purported "public charitable trust is at issue"; and Murray Fasken, a purported trustee thereunder, was made a party as well.

The case was tried to the court, October 16, 1967, resulting in judgment rendered December 29, 1967, decreeing the creation of a "valid and enforceable public charitable trust for the benefit of aged men in Midland County, Texas"; decreeing Murray Fasken as trustee, and vesting in him all of the real property owned by Jessie Wallace at the time of her death, and adjudging that as to all other property owned by Jessie Wallace at her death, she died intestate, and vesting same in her named heirs at law. The appellants requested the court to make conclusions of fact and law, and it filed some such findings and conclusions, to which the appellants duly objected, and requested additional or amended findings and conclusions, which objections and request were not granted.

From the aforesaid judgment of the trial court, this appeal was properly perfected.

Appellants' position is that the purported trust is void and unenforceable and is fatally defective for a number of reasons; that it violates the law and public policy, that it purports if anything to create a private trust or memorial, rather than a public charity, and purports to create one in violation of the rule against perpetuities, that its aims and purposes cannot be ascertained or carried out, and that accordingly the court should have so adjudged the matter, and that the trial court's judgment and rulings to the contrary are in error and require reversal of its judgment.

Appellants present thirteen points of error, which are argued all together, and which we shall discuss in a like manner.

The will involved in this controversy is holographic, and as set forth is as follows:

"The State of Texas Feb. 5–1954
County of Midland

Know all men by these
Presents:

I, Jessie Wallace Bowden, of the County of Midland, State of Texas, being in good health and of sound and disposing mind and memory, and above the age of 21 years, do make and publish this, my last will and testament, hereby reovking all wills by me at any time here-to-fore made.

## II

I direct that all of my just debts be paid, as soon after my death as possible. I direct that my body be buried in a decent, Christian like manner suitable to my station in life. I also direct that I be buried by my first husband Captain W. E. Wallace, and the headstone be like or similar to the one at the grave of W. E. Wallace. I give and bequeath my home and acreage in Section 19 Blk 39-Township 1-South T & P ry Co. survey Midland Co. to be used for a home for aged white men in Midland Co., Texas, in memory of my first husband Capt. W. E. Wallace. If this home and acreage is ever taken in the City limits, then my Trustee herein after named shall have the power to sell this part of my Estate, and build another home in a suitable location. But never in the worst part of town.

I prefer this home, be outside the City limits.

The revenue from my Royalties are to be left in trust by my herein after named Trustee, for the use and benefit of the home for aged white men of Midland Co. Texas.

I hereby direct that my Trustee, hereinafter named have the power to lease said lands that I may die seized and possed of for oil or other minerals. The money from said leases and minerals to go in the fund for the care of aged men in the home.

I hereby nominate and appoint Murray Fasken, Son of Andrew Fasken Trus-

tee & Executor of this my last Will and Testament.

(s) Jessie Wallace Bowden

"I also want if my Mother lives longer than I do, that she be paid $50.00 per month for the rest of her life.

(s) Jessie Wallace Bowden."

The record indicates that the approximate value of the real property owned by the testatrix at her death was approximately $440,000.00, and of the real property interests, approximately $20,000.00.

Appellants maintain that the instrument herein set forth above fails to create a trust, public or private, and calls our attention to the action of the District Court in deleting the word "white" and finding that the bequest was thereby enforceable. Appellants object to such action on the part of the District Court and argue that if any trust is created by this document, known as the Jessie Wallace will, it is a private and not a public trust; that it is void and unenforceable, violative of public policy, and so vague, uncertain, indefinite and ambiguous as to place unlimited discretion in the trustee or court to make decisions beyond the scope of his powers and outside and beyond the intent of the testatrix; that because of the absence of the words "public" or the word "charity" or "public charity", or any word or combination of words synonymous therewith, it cannot be anything but a private trust and cannot be considered a public charity. They further argue that the home was to be established as a permanent memorial to her deceased first husband, and therefore is not set forth as a public purpose, but rather an effort to create a private memorial for aged white men in Midland County in the name of her deceased husband; also that it should be considered that there is designated a choice of a private rather than a public trustee. Appellants further complain that it creates unrestricted discretion to the named private trustee as to the selection and identity, number, ages, and standards of who shall be the beneficiaries and qualified to live in the said home. Appellants argue vigorously that the phrase "aged white men in Midland County" is void as being racially discriminatory and repugnant to state and federal regulations under which funds are dispensed. They again complain that this is the reason that the trial court was guilty of a patent effort to re-write the will of the testatrix by deleting the word "white".

■ We cannot agree with appellants' position for the following reasons. It has been held that such a gift may be regarded as charity even though the actual words "charity", etc., are not used, as the courts look through the form of the document to the substance and intent of the creator or settlor. As pointed out in Restatement, Second, Charitable Trusts, § 351 (1959), "No particular form of words or conduct is necessary for the manifestation of intention to create a charitable trust * * * A charitable trust may be created although the settlor does not use the word 'trust' or 'trustee'." This position has been followed by Texas courts, which have held that even in the absence of the said words, the court will look to and attempt to determine the intent of the settlor or testator, and if a charitable intent is evident from the form of the instrument, it will give effect thereto. Taysum v. El Paso Natl. Bank, 256 S.W.2d 172 (Tex.Civ.App., 1952, err.ref.); Wilson v. Franz, 359 S.W.2d 630 (Tex.Civ. App., 1962, err.ref.); Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A. L.R. 1326 (1946); Scott v. Sterrett, 234 S.W.2d 917 (Civ.App., err.ref., n. r. e.); Inglish v. Johnson, 42 Tex.Civ.App. 118, 95 S.W. 558 (1906, err.ref.). On the basis of these authorities and the language of will and the findings of the court, we feel that the trial court gave proper interpretation to the intent of the testatrix, and did so well within the confines of the cases and texts holding that the mere absence of certain words, as set forth above, does not make the cause or gift inoperative, but that the motive and intent of the settlor or testa-

trix, if legal and operative, will be given full force and effect.

Appellants vigorously assert that this document attempted to create a memorial and not a charitable trust. We do not find merit in this assertion or allegation, either, as we agree with appellees that the mere statement that the home is in memory of her first husband merely indicates the motive which prompted the bequest, but does not invalidate it in any way. This matter is well discussed and brought out in Boyd v. Frost National Bank, supra. This matter is also discussed in Restatement, Trusts, § 368 (1959), page 1140, wherein this text points out that the relief of poverty and many other charitable purposes, which are beneficial to the community, may be in this manner accomplished. See also 10 Am.Jur., Charities, p. 584 et seq. This trust, as we see it, is not—as appellants assert—limited to aged white men in Midland County, Texas, thereby excluding all others who do not meet such category. It has been held that charitable trusts do not have to be universal to all the public in order to be valid. Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273 at p. 280; Clevenger v. Rio Farms, 204 S. W.2d 40 (Tex.Civ.App.1947, n. r. e.). It is pointed out in Scott v. All Saints Hospital, 203 S.W. 146 (Tex.Civ.App.1918, no writ), that a gift is a public charity where there is a benefit to be conferred on the public at large or some portion thereof. This case also points out that even if the bequests are confined to specific classes, *such as decrepit seamen, laborers, farmers,* etc., of a particular town, it is still a public charity. The law, in our opinion, maintains that it is proper to limit a charitable bequest to a particular class of persons so long as it relieves the public of some duty it would have borne, and so long as the particular members of the designated class are not named.

*Nor do we agree with appellants'* assertion that the bequest in the will is too vague, uncertain, indefinite and ambiguous, and the power of the trustee so unlimited and discretionary that the method, mode and standard of its operation would necessarily be so vague as to render it inoperable as a charitable trust, thereby making it a private or personal trust. Bogert, Trust and Trustees, Second Edition, § 371, p. 82; 14 C.J.S. § 20 Charities p. 453; Boyd v. Frost National Bank, supra. In Powers v. First Nat. Bank of Commerce, 138 Tex. 604, 161 S.W.2d 273, the Supreme Court specifically described and emphasized the broad equity powers vested in our courts and states that public charity trusts are particular favorites of courts of equity, which are quick to protect and enforce them. In City of Haskell v. Ferguson, 66 S.W.2d 491 (Tex.Civ.App., no writ), the court points out that *if a trustee is appointed by the testator, and the will shows that the object of the devise, even though expressed in general terms, is for charitable use, the trust will be declared valid and the duty devolves upon the trustee to devolve a scheme for carrying the trust into effect.*

The appellants also maintain that the will does not properly leave the property to the trustee. We do not find merit in this contention, either. It has been said, in 11 Tex.Jur.2d 697, Charities, § 4, that charities are so highly favored in law that the rules of construction are more liberal to sustain them than would be employed if the gifts were to individuals. This text cites the Powers and Boyd cases, supra. 14 C.J.S. § 5 Charities p. 426, points out that no formalities of language or technical words are necessary to establish a charitable use or trust, as the court will look through the form to the substance. Appellants' contention fails, also, because had Jessie Wallace not named a trustee at all, the court could have named one to carry out her express purpose as evidenced in the will. Restatement of the Law, Second, Trusts § 397, Comment d (1959); Powers v. First Nat. Bank of Corsicana, supra; Morse v. First Nat. Bank of Galveston, 194 S.W.2d 578 (Civ.App.1946, err.ref., n. r.

e.); Coffee v. William Marsh Rice University, 408 S.W.2d 269 (err.ref., n. r. e.).

Appellants cite Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, and City of Haskell v. Ferguson, 66 S.W.2d 491 (Tex.Civ.App. 1933, no writ), but we do not believe these two cases to be in point or decisive of the matters that confront us in the present controversy. In the Beggs case the Supreme Court stated that a charity for the orphan children of deceased Masons, Odd Fellows, Baptists, Catholics, etc. of a state is not a public charity. We do not have that limitation in this case. In the Haskell case, the testatrix left a will providing: "First, I want a hospital built in Haskell in memory of my husband, Francis Marion, to cost $50,000." In that case the court points out that she did not bequeath or give said sum to the City of Haskell or vest the legal title or equitable interest in and to said sum in any person, natural or artificial. Such is not the situation in the case before us.

Appellants also attack the validity of the trust set up under the will of Jessie Wallace as being based on the proposition that a charitable trust for "aged white men" is racially discriminatory in its terms and thus violates the law and public policy. We do not find merit in this position, as we believe the court was within its equitable powers in deleting the word "white" from the trust by applying the doctrine of approximation or cy-pres. Appellees contend that how the funds are applied or administered upon the application of the doctrine of approximation is of no concern to the heirs in this case, but only to the Attorney General, the beneficiaries of the trust, the trustee, and the court. We do not feel that this inclusion of the word "white" defeats the purpose of the testatrix but, at most, it is an unenforceable word and properly deleted by the lower court. This position and matter is well illustrated in the case of In re Girard's Estate, 386 Pa. 548, 127 A.2d 287; Pa. v. Board of Directors, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957); In re Girard College Trusteeship, 391 Pa.

434, 138 A.2d 844, certiorari denied in the above case, 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed.2d 1546 (1958). Here we have no contact with the state or any agency or arm thereof, except in the administrative enforcement of any such provision. It is not believed that the entire trust would fail because a portion contained such a clause as here contravened some applicable law. In conclusion, we feel that the trial court was correct in its ruling that a general charitable intent appears on the face of the will, and that the word "white" rightfully was deleted by the court, and that when the trust begins actual administrative operation, there will be no state action involved which would be prohibited by the dictates of the Fourteenth Amendment. It must be noted, too, that while Mrs. Wallace did use the term "aged white men", her last reference to the purpose of her trust refers to "aged men".

Appellants further allege that the trust is invalid because there are insufficient funds to establish and operate a "home for aged white men in Midland County". We do not find merit in this point for the following reasons. The trustee had the discretion of using the present house and acreage, or selling it and building a new home. The will does not dictate the size of the home or limit or specify the number of men who shall receive its benefits. Appellee Attorney General of Texas established by uncontroverted testimony of witnesses that the value of the estate in trust was $440,000.00. This sum being available to establish a home and administer it. He also produced expert testimony from architects, with the net result that it was estimated that a 15-bed convalescent home could be built for $52,000.00, not including the price of the land, and that the annual operating expenses for a hypothetical 15-patient home at full occupancy would be $17,148.36. Further, there is no objection or handicap in the charitable trust in allowing the trustee to charge recipients of the trust if they are able to pay, so long as the purpose is not to make a profit for

the benefit of the settlor or trustee. Boyd v. Frost Nat. Bank, supra. Also, there is no barrier or limitation to receiving private donations, either to build or maintain the home, as well as the possibility of federal and state funds that might be available to help finance and administer the home. The trustee is therefore given great flexibility in the establishment and operation of the home. As pointed out in Powers v. First Nat. Bank of Corsicana, supra, if the court finds that the purpose is charitable, that a trustee has been appointed, beneficiaries are identified, and that funds are available to establish and operate a home, however modest, then, as a matter of law, the trust is valid. Examination of the valuations involved demonstrate that after construction of a home, there will still remain more than enough money, properly invested, to administer the home and carry out the purpose of Jessie Wallace; and this conclusion is irrespective of donations, contributions, and charges which might be made patients, and federal or state aid.

 Appellees point out that the trial court, in its Findings of Fact and Conclusions of Law, found that there is no provision in the Jessie Wallace will that expressly excludes non-white people from sharing the benefits and enjoyments to be derived from the home for aged men, nor does said will confine the use to white men in Midland County, solely. Also, the trial court felt that "a general charitable intent appears on the face of the last will and testament of Jessie Wallace, deceased". The appellants challenge the correctness of these findings, but have neither briefed nor argued Points of Error 2, 5, 10, 11, 12 and 13, which are applicable thereto, and therefore have probably waived these points. However, we will discuss them in any event. It has long been established that courts of equity have the power and duty in certain instances to apply the equitable doctrine of approximation or cy-pres to remove an objectionable limitation contained within a charitable trust. See Coffee v.

William Marsh Rice University, supra. Also, the courts of Texas have long recognized that charities are favorites of the law, and the rules of construction are more liberal to sustain them than they would be if the case involved a gift to individuals. See Boyd v. Forst Nat. Bank, supra. The entire tenor and context of the trust proclaims the testatrix's dominant purpose to establish a home for aged men in Midland County, Texas in memory of her husband. Further, it is evident from reading the will that her general charitable intent is very clear, in that she does not provide for any gift to any individual or organization in case of the failure of this trust. She does not anywhere expressly exclude any other race, nor limit the benefits of this home to the white race solely. Therefore it is, in our opinion, clearly evident that the dominant and primary purpose of this testatrix was to establish a charitable trust, which read with the findings and holdings of the trial court is, in our opinion, legal and available to be put into operation. She may have preferred the home, as she referred to it at times in her will, to be limited to white men, but this was not her dominant purpose in establishing this trust, and the trial court in our opinion acted with correct analysis when it deleted the word "white" in order to enable the obvious dominant purpose of this charitable trust to be put into effect. To hold otherwise would not be just or equitable. It would hardly seem just or equitable, or in furtherance of the testatrix's expressed charitable intent, to strike down in toto, at a time fourteen years after the execution of her will, her charitable bequest.

A brief is found in the record representing other descendants or relatives of the testatrix, but this brief merely adopts the brief of the appellants which we have just discussed. It has no points and no new information or authorities.

For the reasons set forth above, all of the appellants' points are overruled and the decision of the trial court is affirmed.