# IN RE APPLICATION OF SISTER ELIZABETH KENNY FOUNDATION, INC.

126 N. W. (2d) 640.

February 21, 1964—No. 39,053.

*Randall, Smith & Blomquist* and *Perry M. Wilson, Jr.,* for appellant.

*Vennum, Newhall, Ackman & Goetz, Norman L. Newhall, Jr.,* and *Jerrold F. Bergfalk,* for respondent foundation.

*Walter F. Mondale,* Attorney General, and *Robert A. Albrecht,* Special Assistant Attorney General, for respondent Attorney General.

NELSON, JUSTICE.

Appeal from an order of the Hennepin County District Court denying a motion to intervene in proceedings initiated to obtain modification of a charitable trust.

Cora Belle Salmon, a resident of Westchester County, New York, died in 1951. Her last will, dated January 27, 1951, was admitted to probate and a decree of the surrogate's court of Westchester County settled the estate. The will created a residual trust for the benefit of one May K. Houck and provided that after her death one-fourth of the principal of the trust should be distributed to the Sister Elizabeth Kenny Foundation, Inc. (hereinafter referred to as Kenny) "to be used for the free treatment of needy victims of polilmyalitis [sic] who reside in the State of New York." The life beneficiary died February 4, 1961, and thereafter under the provisions of the trust the sum of $145,389.75 was delivered to Kenny.

When the decedent executed her will in 1951, shortly before her death which occurred in the same year, Kenny had a clinic in New York City. The major portion of the work conducted by the foundation was devoted to research and to the treatment of victims of poliomyelitis, most of whom were unable to pay. The New York City clinic was closed in 1961 and the operation of said clinic was consolidated with a treatment center maintained by Kenny in Jersey City, New Jersey. Kenny has continued to treat needy victims of poliomyelitis from New York at the Jersey City clinic.

Since 1951, through the development of Salk vaccine, the need for treatment of poliomyelitis has been materially lessened by reason of the reduction in the incidence of the disease. Research has been made virtually unnecessary by reason thereof; there are almost no new acute

cases; and most of the patients now receiving treatment are persons suffering from the residual effects of poliomyelitis suffered in the past. For these reasons Kenny is now devoting its energies to the rehabilitation of persons crippled by all sorts of muscular and skeletal diseases or injuries; to research in the prevention of crippling diseases; and to research in the best methods of rehabilitating crippled persons, in accordance with the corporate purposes of the foundation.

Alleging that due to the marked changes in circumstances occurring between 1951 and the present, it has become less practicable and may become impossible to comply literally with the terms of the trust established by Mrs. Salmon's will, Kenny filed a petition pursuant to Minn. St. 501.12, subd. 3,[1] seeking a modification of the trust.

The petition and one supplementing it, taken together, asked that the district court modify the trust to permit use of the property received by Kenny for treatment of a wider variety of muscular and skeletal diseases and injuries. According to the supplemental petition Kenny presently operates the S. S. Pollak Hospital in Jersey City, which is

---

[1] Minn. St. 501.12, subd. 3, provides: "Such trust shall be liberally construed by the courts so that the intentions of the donor thereof shall be carried out when possible and no such trust shall fail solely because the donor has imperfectly outlined the purpose and object of such charity or the method of administration. When it shall appear to the district court of the proper county that the purpose and object of such charity is imperfectly expressed, or the method of administration is incomplete or imperfect, *or that the circumstances have so changed since the execution of the instrument creating the trust as to render impracticable, inexpedient, or impossible a literal compliance with the terms of such instrument,* such court may, upon the application and with the consent of the trustee, and upon such notice as the court may direct, make an order directing that such trust shall be administered or expended in such manner as in the judgment of the court will, as nearly as can be, accomplish the general purposes of the instrument and the object and intention of the donor without regard to, and free from any, specific restriction, limitation, or direction contained therein. No such order shall be made without the consent of the donor of the trust if he is then living and mentally competent. The attorney general shall represent the beneficiaries in all cases arising under this section and it shall be his duty to enforce such trusts by proper proceedings in the courts." (Italics supplied.)

an 80-bed treatment center serving inpatients and outpatients afflicted with a variety of crippling disabilities and is also the Eastern area office for the foundation. The center is located less than 2 miles from the Holland Tunnel; 7 miles from the Lincoln Tunnel; 15 miles from the George Washington Bridge; and 8 miles from the Narrows Bridge (under construction to link Brooklyn and Staten Island with New Jersey). It is located within a half mile of the New Jersey Turnpike and 10 miles from the Garden State Parkway, which gives direct access to upstate New York. From 1960 to September 1962, 89 patients from New York have been treated at the facilities in New Jersey, most of whom were either hospitalized or treated on numerous occasions at the clinic. Of the 89 New York patients so treated, 64 were suffering from poliomyelitis or its aftereffects.

The original petition requested the court:

"(a) To set a hearing on this petition, and to order what notice shall be given, and to what parties, of such hearing, pursuant to the provisions of Section 501.12(3).

"(b) To order [upon] such hearing that Sister Elizabeth Kenny Foundation, Inc. shall use the distributions coming to it from the Will of Cora Belle Salmon for its general corporate purposes as expressed in Article II of its Articles of Incorporation."

The supplemental petition requested an order as follows:

"A. Permitting the use of the distribution coming to it from the Will of Cora Belle Salmon for its general corporate purposes as expressed in Article II of its Articles of Incorporation:

"Or, in the alternative,

"B. Directing Sister Elizabeth Kenny Foundation, Inc., to use the distribution coming to it from the Will of Cora Belle Salmon for the free treatment of New York residents who are victims of poliomyelitis or crippled by other muscular or skeletal diseases or injuries;

"Or, in the alternative,

"C. Directing Sister Elizabeth Kenny Foundation, Inc., to use the distribution coming to it from the Will of Cora Belle Salmon for the free treatment of needy victims of poliomyelitis who reside in the

State of New York as long as there are a sufficient number of such victims to use the proceeds in that way, but permitting use of any balance remaining from said bequest (or from the income from said bequest) for the treatment of victims of other crippling muscular or skeletal diseases or injuries who reside in the State of New York."

After the filing of the original petition an order was issued by the District Court of Hennepin County on July 5, 1962, setting a date for hearing on the petition and requiring that notice of the hearing be given interested persons by publication of the order and by mailing copies of the order and the petition to certain persons, including the attorney general of this state and the appellant, The National Foundation, Inc. (hereinafter referred to as National).

National, after receiving notice of the proceedings, moved the district court to allow it to intervene as a party to the proceedings in order to assert certain claims which it set forth in a proposed answer. Its motion was submitted upon the grounds that it has a direct, legal, equitable, and economic interest in the proceedings because it stands to gain or lose by the direct legal effect of any judgment which the court may enter therein, whether or not it is a party to the action; that representation by the present parties of National's interest, as well as the interests of the beneficiaries of the trust created by Mrs. Salmon's will, is or may be inadequate; that National's claim to the funds held by Kenny presents questions of law and of fact which are in common with the questions of law and fact relied upon by Kenny in seeking the relief it has requested. National alleges in its proposed answer that it is a corporation organized and existing under the laws of the State of New York; that it is qualified and authorized to do business in the State of Minnesota; that until 1958 its name was "The National Foundation for Infantile Paralysis" and that it was and is commonly known as "The March of Dimes"; that until 1958 it was engaged almost exclusively in research concerning poliomyelitis and in the treatment and care of victims of poliomyelitis; that such victims were, and are at the present time, treated and cared for upon a nationwide basis by it; and that it has necessary facilities to comply with the terms of the trust and is willing to do so. On the basis of these allegations National

asks the court to direct Kenny to turn over to it all properties received under the trust and to direct it to use such properties for the free treatment of needy victims of poliomyelitis who reside in New York.

After a hearing, at which Kenny and the attorney general appeared in opposition to the motion for intervention, the district court entered its order denying the motion. National has appealed to this court from that order.

National contends that the order dated July 5, 1962, requiring notice of hearing to be given to it determined that it was an interested party to these proceedings; that it is entitled to intervene as a matter of right under Rule 24.01, Rules of Civil Procedure; and that the court abused its discretion in failing to allow intervention under Rule 24.02.

National contends that it became a party to the proceedings when the district court required that it be given notice of the proceedings. Minn. St. 501.12, subd. 3, which controls cy pres proceedings in this state, does not make any provision for adding parties to such a proceeding. The limited situations in which a person may be added as a party to a civil action are now set forth exclusively in the Rules of Civil Procedure. What the court intended to do by its order of July 5, 1962, was to follow that portion of § 501.12, subd. 3, which requires the court to direct to whom notice of the proceedings shall be given. The order made no reference to intervention under the rules nor did it make any reference to "parties" when referring to National. The same notice was given to all interested persons not specifically named by means of newspaper publication. Such persons were not given the status of parties to the action, nor were those specifically named as persons to whom notice should be given by mail. It is clear that appellant was not made a party to the proceedings by the order.

The only question raised by this appeal, therefore, is whether the district court erred in denying National's motion to intervene. It contends that it was entitled to intervene as a matter of right under all three clauses of Rule 24.01, Rules of Civil Procedure.

Rule 24.01(1) provides for intervention as a matter of right as follows:

"* * * [W]hen the applicant has such an interest in the matter in

litigation that he may either gain or lose by the direct legal effect of the judgment therein whether or not he were a party to the action."

The foregoing portion of Rule 24.01 follows the language of Minn. St. 1949, § 544.13, superseded by the rule, except for the words "whether or not he were a party to the action." These were added for the purpose of codifying this court's decision in Faricy v. St. Paul Investment & Sav. Society, 110 Minn. 311, 125 N. W. 676.[2] In the Faricy case this court said (110 Minn. 319, 125 N. W. 679):

"* * * [W]e subscribe to the proposition that a party is entitled to intervene when he would necessarily gain or lose by the direct legal effect of the judgment therein if he became a party to the action, and to this extent only, and do not restrict the right to intervention to cases in which the intervener would gain or lose by the direct effect of the judgment if he were not made a party."

Clauses (2) and (3) of Rule 24.01 were taken from clauses (2) and (3) of Rule 24(a), Federal Rules of Civil Procedure. Clause (2) of Rule 24.01 allows intervention as a matter of right—

"* * * when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action."

Clause (3) allows intervention—

"* * * when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

Even though National contends that it is entitled to intervene as a matter of right under all three clauses of Rule 24.01, on the facts shown by the record it appears unnecessary to consider each clause

---

[2]See, Minnesota Rules of Civil Procedure, Tentative Draft, Note 4 to Rule 24.01; Wright, *Joinder of Claims and Parties under Modern Pleading Rules,* 36 Minn. L. Rev. 580, 628; Wright, Minnesota Rules, p. 143; 1 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 24.01, p. 656; 2 Pirsig, Minnesota Pleading (4 ed.) § 2024.

separately. Upon the facts it is clear that if National does not have the type of interest required under clause (1), whereby it will either gain or lose by the decision rendered in the present cy pres proceedings, it cannot be said that appellant will be "bound" or "adversely affected" under clauses (2) and (3). Accordingly we reach the conclusion that whether National may intervene as of right is dependent upon its fulfillment of the requirements of Rule 24.01(1).[3]

National's position is that it has fulfilled the literal requirements of Rule 24.01(1) and that, therefore, it is entitled to intervene as a matter of right. This argument assumes that the words "may either gain or lose" in Rule 24.01(1) mean a *possible* gain or loss as opposed to a necessary gain or loss. It is clear, however, in view of the history of the rule, that it does not contemplate merely a possible gain or loss. The Faricy case, codified in Rule 24.01(1), held that a party is entitled to intervene when he would necessarily gain or lose by the direct legal effect of the judgment therein if he became a party to the action. National cannot show such a gain or loss; it would suffer no real loss if the court did not direct that the trust property be turned over to it, since it would lose nothing which it had formerly enjoyed, nor would it necessarily gain by the effect of the judgment in the proceedings.

■ Regardless of the construction to be given the words "may either gain or lose,"[4] it is clear from the record that the "gain" as-

---

[3]Professor Wright, in Minnesota Rules, p. 144, and in 36 Minn. L. Rev. 630, concludes that no case can arise in which one would be entitled to intervention under clauses (2) and (3) but not clause (1) of Rule 24.01. This would appear to be in accordance with the interpretation the Federal courts have placed on clauses (2) and (3) of Federal Rule 24(a). Though Rule 24.01(1) does not have a counterpart in Federal Rule 24(a), clauses (2) and (3) of the Federal rule have been construed to impose restrictions similar to those of Rule 24.01(1). See, Formulabs, Inc. v. Hartley Pen Co. (9 Cir.) 275 F. (2d) 52, certiorari denied sub nom. Hartley Pen Co. v. Formulabs, Inc. 363 U. S. 830, 80 S. Ct. 1600, 4 L. ed. (2d) 1524; Kelley v. Summers (10 Cir.) 210 F. (2d) 665; Pure Oil Co. v. Ross (7 Cir.) 170 F. (2d) 651. Thus, clauses (2) and (3) of the Federal rule appear no broader than clause (1) of Rule 24.01.

[4]See, Walker v. Sanders, 103 Minn. 124, 114 N. W. 649; Wohlwend v.

serted by National is not sufficient to create the requisite "interest" contemplated by Rule 24.01(1). As the trial court pointed out, National is a stranger to these proceedings and was not named in the will, although it was in existence when the will was made. It claims a right to intervene because it hopes to receive the property willed to Kenny.

In In re Trust in Estate of Everett, 263 Minn. 398, 402, 116 N. W. (2d) 601, 604, this court determined that "[t]he mere hope of being a beneficiary of an application of the cy-pres doctrine is hardly the kind of immediate injury necessary to make one an 'aggrieved party' " for the purposes of appeal. That decision points to repeated holdings that an aggrieved party is (263 Minn. 401, 116 N. W. [2d] 603) "one whose personal rights are injuriously affected by the adjudication, and that a person having no interest in the subject of litigation cannot be aggrieved."

In Bolster v. Attorney General, 306 Mass. 387, 389, 28 N. E. (2d) 475, 476, quoted with approval by this court in In re Trust in Estate of Everett, *supra,* the court, in dismissing an appeal by a charitable corporation which had been permitted to intervene in a probate court proceeding to obtain instructions with respect to a trust, held:

"* * * As an institution that hoped to be the beneficiary or active agency of the application of the *cy pres* doctrine, Simmons College had no legally recognized private interest in the disposition of the fund. It had no interest different in kind from that of the public generally, which is represented exclusively by the Attorney General. Consequently it could not, legally speaking, be aggrieved by any disposition of the fund that may have been made, and has no right of appeal."

For the same reason the mere hope of being a beneficiary of an application of the cy pres doctrine is not a sufficient interest under Rule 24.01(1) to entitle National to intervene as a matter of right. Its contention that it may "gain" because the lower court may direct

---

J. I. Case Threshing-Machine Co. 42 Minn. 500, 44 N. W. 517; and Faricy v. St. Paul Investment & Sav. Society, 110 Minn. 311, 125 N. W. 676.

payment of trust money to it is an argument that could also be made by any member of the general public willing to use the money for the free treatment of needy polio victims residing in New York. A "gain" such as this does not satisfy the "interest" contemplated by Rule 24.01(1). It is no doubt true that National's chances of being named beneficiary may be greater than those of an ordinary member of the general public since it has been engaged in the treatment of polio victims and would be better equipped to carry out the terms of the trust, but it still has no greater "interest" in, or claim to, the trust proceeds than other members of the public. It is not, as a consequence, entitled to intervene as a matter of right under Rule 24.01(1). See, Schaeffer v. Newberry, 227 Minn. 259, 35 N. W. (2d) 287. Not having been named in Mrs. Salmon's will, it is a stranger to the cy pres proceedings instituted below. In In re Trust in Estate of Everett, 263 Minn. 398, 402, 116 N. W. (2d) 601, 604, we said, citing Minn. St. 501.12, that the attorney general has the duty of enforcing charitable trusts and that "[a] member of the general public, without a special interest in the matter, is not entitled to enforce a charitable trust."

■ Though a possible beneficiary is not able to intervene in a cy pres proceeding as a matter of right, this is not to say that intervention will never be allowed. Rule 24.02 permits the court below in its discretion to allow intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Persons who were not beneficiaries but might be indirectly affected by the litigation in a substantial manner were allowed to intervene under the New York counterpart to Rule 24.02 in Matter of Petroleum Research Fund, 3 Misc. (2d) 790, 155 N. Y. S. (2d) 911, affirmed with modifications, 3 App. Div. (2d) 1, 157 N. Y. S. (2d) 693. Since the desirability of permitting a possible beneficiary to intervene in a cy pres proceeding is dependent upon the individual facts of each case, Rule 24.02, which makes intervention a matter of discretion, is well designed to control applications to intervene.

Since National was not entitled to intervene as a matter of right, the only other question before us is whether the court below erred in refusing to permit it to intervene under Rule 24.02. In Miller v.

Marketmen's Mutual Ins. Co. 262 Minn. 509, 115 N. W. (2d) 266, this court held that a discretionary order or decree permitting or refusing to permit intervention in a cause is not appealable.[5] On the Federal level an appeal has been allowed if the lower court abused its discretion. See, 4 Moore, Federal Practice (2 ed.) § 24.15. Even if the rule in the Miller case were not applied to dispose of this appeal, it cannot be said that the court below abused its discretion in denying the application to intervene, since the record indicates that the beneficiary is presently able, ready, and willing to comply with the terms of the trust should the lower court prove unwilling to expand them.

Affirmed.

---

[5]See, also, In re Condemnation of Lands Owned by Luhrs, 220 Minn. 129, 19 N. W. (2d) 77; Cunningham, *Appealable Orders in Minnesota,* 37 Minn. L. Rev. 309, 329.