John B. COFFEE et al., Petitioners,

v.

**WILLIAM MARSH RICE UNIVERSITY
et al., Respondents.**

**No. A–10719.**

Supreme Court of Texas.

April 27, 1966.

Rehearing Denied June 1, 1966.

Bracewell, Reynolds & Patterson, William Key Wilde, with above firm, Wright Morrow, Houston, for petitioners.

Baker, Botts, Shepherd & Coates, Tom M. Davis, O. Don Chapoton, Alvin M. Owsley, Jr., and Dillon Anderson, with above firm, Houston, for respondents.

GREENHILL, Justice.

William Marsh Rice created a charitable trust resulting in the establishment of Rice University. Among other things, the trust instrument specified that the institution should be for white citizens and that it should be free of tuition for all students. Rice University and its trustees, hereinafter referred to as Rice, instituted this action for a construction of the trust instrument and for an application of the equitable doctrine of *cy pres* generally for the elimination of the above limitations. Rice named as defendant the Attorney General of Texas, pursuant to Article 4412a which was enacted in 1959.[1] Two groups intervened:

---

1. All statutes referred to herein are revised civil statutes of Texas as carried in Vernon's Annotated Civil Statutes. Article 4412a was enacted as Acts 56th Legislature, Regular Session 1959, page 203, chapter 115.

(1) John Coffee et al., generally representing themselves and the class of all Rice alumni (beneficiaries of the trust and donors to it) who opposed change, and (2) Charles Bybee et al., who represented themselves and the portion of Rice alumni similarly situated who favored the position of the trustees of Rice University. There was no objection to either intervention, and the trial for the defense was actually carried on in substance by counsel for the intervenors Coffee et al. Trial was to a jury resulting in a verdict for Rice. Judgment was entered for Rice upon the verdict.

■ The intervenors Coffee et al. appealed to the Court of Civil Appeals sitting in Houston. The Attorney General did not appeal. Rice made no complaint of the capacity or interest of Coffee to appeal. It had no point that those intervenors lacked interest or capacity to appeal. Nevertheless, the Houston court on its own motion held that it had no jurisdiction to consider the appeal because the intervenors did not have sufficient interest to prosecute an appeal. So it declined to consider the case and dismissed the appeal. 387 S.W.2d 132. The narrow question, and the single point of error before us is the correctness of that action. It is our opinion that the conclusion of the Houston Court of Civil Appeals was an erroneous one, and the cause will be returned to that court for a consideration of the merits of the controversy.

The Houston Court of Civil Appeals was of the opinion that Article 4412a made the Attorney General the only party, in the context of this case, who could appeal. Its holding was that the group represented by Coffee lacked a legal interest in the controversy to appeal; and since the Attorney General did not perfect the appeal, the matter was at an end.

The interventions were not contested in the trial courts. So we do not have before us for review any ruling of the trial court on permitting or excluding the interventions. Both groups were permitted to intervene, and the Coffee group was permitted to try the case for the defense. There is a great mass of testimony which fills four volumes. Except for a few isolated questions on cross examination, and an occasional joinder in stipulations of fact, the representative of the Attorney General was silent. The only pleading filed by the Attorney General was a one-page answer in which he neither admitted nor denied the allegations of Rice; he requested the court to require proof and to act in such a manner as to do justice and equity. The real contest came from the intervenors Coffee et al. They filed exceptions to Rice's pleadings, filed pleas in abatement, motions for instructed verdict, made objections to the court's charge to the jury, et cetera. The Attorney General filed none. His position was and is that he was neutral in the matter, and simply wanted to see that all groups were heard, the matter fully developed, and justice done.

After the decision of the Court of Civil Appeals, the Attorney General tendered for filing in that court a motion for rehearing. It urged that court to set aside its order and to consider the case on its merits. That motion states:

"It has been the wish of the Attorney General, the nominal defendant herein and necessary party under the provisions of Article 4412a, Revised Civil Statutes of Texas, that the various segments of the public having different views and interests regarding the relief sought by the trustees of William Marsh Rice University should have an opportunity to contest this action if they desired. It was felt that the people could best be served by the Attorney General in seeing that the case was fully developed and that a court and a jury should decide the issues involved in accordance with the law and the evidence. At the beginning, it was agreed that all parties who desired to intervene herein would be entitled to do so and the Attorney General, so long as this course was being followed, would not actively contest this case, leaving such contest to those parties who might have

an interest herein. To this end the Attorney General with knowledge and acquiescence of all parties hereto did not seek to either contest or agree to the relief sought by William Marsh Rice University, but rather sought to see that the evidence was fully developed in the court below. After the jury returned its verdict, and at the hearing on Plaintiff's Motion for Judgment the court was advised that the Attorney General had no objection to Rice University being given some of the relief sought therein although it was felt that the proposed judgment went too far in its scope and effect. At this time the court was informed that the Attorney General would consider the question of appeal and give notice to the court later if he wished to appeal from the Judgment as written.

"Subsequent to the entry of the Judgment but prior to the expiration of the time for giving notice of appeal, a conference was had with attorneys for the intervenors, the Appellants herein, at which time they advised that in their opinion, the Attorney General would not have to be a party to the appeal in order for the Appellants to have a complete hearing on the merits of their appeal from the adverse Judgment in the court below. This decision was reached as the attorneys for the intervenors thought that since their clients had been allowed to intervene and were named as parties for all purposes, had conducted an active contest of the relief sought by William Marsh Rice University, and had raised objections to the evidence presented, they would be entitled both in law and in equity to have this honorable Court hear and determine the grounds of error which they set out as a basis for setting aside the Judgment heretofore entered by the trial court.

"Attorney General Waggoner Carr desires nothing other than to see that this case is fully decided on its merits, both as to law and as to facts, for the protection of the public at large, who are the real beneficiaries of the William Marsh Rice Trust."

The Court of Civil Appeals, in a per curiam opinion which it ordered not published, refused to consider the Attorney General's motion and stated that it should not be considered as part of the record. The Attorney General, by amicus curiae brief in this Court takes substantially the same position, again stating that "this brief is not intended to be construed * * * as being an argument for or against the position taken by either Petitioners or Respondents concerning the case on its merits."

In his brief in this Court, the Attorney General states that while Article 4412a makes him a necessary party, it does not make him the only or preclusive party; and that it was not the intention of the legislature to so alter the common law of this State as to prevent the appeal of anyone other than the Attorney General, in the context of this case. Intervenors Coffee et al. take a similar but stronger position.

■ This leads us to a construction of Article 4412a which states, among other things, that the Attorney General "shall be a necessary party" in any suit "[t]o construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust" or "[t]o depart from the objects of a charitable trust as the same are set forth in the instrument * * * including any proceedings for the application of the doctrine of cy pres * * *." The Attorney General, in such cases, must be served with process; and any judgment rendered without service upon him is declared void and may be set aside upon his motion. He is authorized to settle and compromise any such suit in or out of court, and no compromise or judgment is binding unless he is a party and joins therein. He is given discretion in such matters "in the best interest of the public."

The article does not preclude other parties from the trial or appeal of such cases.

It does not require the Attorney General to file an answer or to conduct the litigation. He must be a party, he must be served with citation, and he must be a party to any settlement. Rice contends that the statute makes him the sole representative of the public and persons interested in the charitable trust. Rice construes the Attorney General's failure to appeal as amounting to an agreement to the trial court's judgment; and since he can agree to compromises and settlement of litigation, this ended the matter. Rice asserts that intervenors Coffee et al. have no special interest, no legal justiciable interest, no interest different from anyone else of the general public; and that the Court of Civil Appeals correctly decided that it therefore had no jurisdiction to consider the case.

There is much authority outside of Texas that the Attorney General is the representative of the public in suits to enforce or attack a charitable trust or to question the operation thereof. 4 Scott, The Law of Trusts (2d ed. 1956) § 391. While the Attorney General is not regarded as the only person who can bring suit, any other person must have some special interest in the performance of the trust different from that of the general public. The reason given is that if third parties could bring suit, the charities and their trustees would be subject to undue harassment.

The Attorney General and the intervenors Coffee et al. concede that to *initiate* any action to enforce or attack a trust, or to initiate any *cy pres* action, the suit may not be brought by third parties [such as intervenors Coffee et al.], and that such action must be brought or initiated by the Attorney General or by the trustees themselves. That point is therefore not before us. Their position is that when the trustees themselves bring the suit and the Attorney General is made a party, and others are made parties or are permitted to intervene, the question of undue harassment of the trustees goes out of the case; and the case may proceed as other civil cases.

The power of the courts of equity and the power of the Attorney General in matters dealing with charitable trusts have deep roots in our common law. Suits were brought by the Attorney General in England even before the enactment of Charitable Uses in 1601. Statutes giving him the exclusive authority there were found unsatisfactory, and that power in England was ultimately placed elsewhere. 4 Scott, The Law of Trusts (2d ed. 1956) 2753 et seq. Some of the early opinions of the Supreme Court of Texas set out below relate to charitable trusts and the interest of the beneficiaries. In these cases it has been held that certain beneficiaries, as representatives of a class, did have justiciable interest.

In Tunstall v. Wormley, 54 Tex. 476 (1881), a charitable trust was created by a Methodist congregation to establish a missionary Baptist church. Suit was brought by Wormley for himself and other parties on behalf of an unincorporated Baptist group who claimed the property for their use. The Attorney General was not made a party, and no point was made of that. There was, however, this large body of common law that the Attorney General was the proper representative of the public in charitable trust cases. This Court there said:

> "If he [the trustee] abused that trust and attempted to pervert the property to other purposes, and deprived the beneficiaries of the enjoyment of it in the contemplated mode, the courts were open to them for the redress of their grievance. In such case a suit may well be maintained by one or more of the beneficiaries, for the benefit of all, where the parties are very numerous, and equity will interpose to compel the due execution of the trust by the offending or refractory trustee, by divesting him of the property, if necessary, and appoint a new trustee." [54 Tex. at 481]

Thereafter in Pierce v. Weaver, 65 Tex. 44 (1885), a charitable trust was executed to create and maintain a school of the first

class for the white citizens of Sulphur Springs, Texas. A dispute arose because the school came under the operation of the Methodist church. Suit was brought by Pierce for himself and for other white citizens of the town to recover the property, for the appointment of new trustees, and the enforcement of the trust as originally created. Pierce, purporting to represent a class of beneficiaries, was the appellant in this Court. The Attorney General was not a party to the suit. While no point was made of his lack of joinder, this Court obviously considered that it had jurisdiction to consider the appeal because it determined the merits of the controversy.

The shoe was on the other foot in Woods v. Bell, 195 S.W. 902 (Tex.Civ.App.1917, writ refused). There a park was created by charitable trust for the use of Negro citizens of Houston. The trust created a charitable organization to operate the park. Suit was by the trustees, all of whom were Negro. They wanted the City of Houston, under the doctrine of *cy pres*, to take over the park because the charitable organization was in financial difficulty. This required the appointment of new trustees. The City evidenced its willingness to take over. Many Negroes favored this action, including the Negro trustees. A group of Negro citizens headed by Woods intervened on behalf of those who did not want the park turned over to the City whose management was all white. Judgment was for the trustees, and the intervenors appealed, as they did in this case. The Court in Woods v. Bell wrote, "From this judgment [of the trial court], the interveners opposing the court's action excepted and gave notice of appeal, *and the case is properly before the court for adjudication."* 195 S. W. at 903, emphasis ours. The Attorney General was not a party to the suit, and no point was made of his absence. But the Court obviously was of the opinion that the intervenors had a justiciable interest and that it had jurisdiction of the appeal initiated by the intervenors. The judgment of the trial court was affirmed.

Similarly in Inglish v. Johnson, 42 Tex. Civ.App. 118, 95 S.W. 558 (1906, writ refused), a charitable trust was created for the female school children of Bonham, Texas. The named trustee was a local Masonic Lodge. A group of girls describing themselves as beneficiaries brought an action to substitute the City for the Masonic Lodge as the trustee and to authorize boys as well as girls to attend the school. The Attorney General was not made a party. It was contended by the defendants that the expressed intention of the settlors could not be changed. The action of the trial court granting the relief was affirmed. No one contended that the Court of Civil Appeals was without jurisdiction or that those purporting to represent "the beneficiaries" had no justiciable interest sufficient to give the court jurisdiction.

Thereafter, the point was urged in several cases that the Texas Attorney General did not even possess the power to interfere in charitable trusts or to bring suit to enforce the same. In Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223 (1935), the Attorney General brought suit to enforce charitable bequests. The testator directed that his property be sold and distributed to "such charities and worthy objects" as his executor should select with the advice of his sister. The estate was valued in excess of $1,700,000. Not all of the testator's suggested beneficiaries were charitable. The holding of the case was that the Attorney General had no authority to bring the suit. Speaking for the Court, Judge Critz stated that for a court of equity to interfere with a trust, its power must be properly invoked. The Court regarded this trust as private, not charitable. Then by way of obiter dictum, and without reference to any of the cases above set out, he wrote, "The Attorney General only has power to bring such a suit when the trust or donation is to public charity only." 84 S.W.2d at 228.

Thereafter, Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273 (1942), came to this Court. The testatrix had left a very large estate in

trust. The trust was to be used "for worthy objects of charity, including the support of the Christian religion * * *." The objects of the charity were to be selected by the trustee. Suit was brought by heirs of the testatrix to have the trust declared invalid because it created a perpetuity, the beneficiaries were too indefinite, and since the beneficiaries were wholly indefinite, no one could police or enforce the trust. The Attorney General intervened, and his right to intervene was contested but upheld. It was said that it not only was his right, but it was his duty to protect and enforce the trust which was declared to be charitable. So the right of the Attorney General to intervene in a case involving a charitable trust was established.

The next in this line of cases cited by counsel for Rice is Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326 (1946). Mrs. Pryor had there left her million-dollar estate in trust to the Frost National Bank, giving it the power to select the beneficiaries. The Attorney General was not made a party, and he did not intervene in the case at any stage. Mrs. Pryor's heirs attacked the testamentary trust for, among other things, its indefiniteness. It was again asserted that nobody could police the trust; and that if the court took over it would be the court which selected the beneficiaries, not the testatrix or her trustee. By way of answer, this Court said that the courts could select another trustee if the first were unfaithful or neglected to act, and that the selection of the beneficiaries would be the trustee's selections, not the court's. Then it stated that, in addition, the Attorney General was available and authorized to bring suit if necessary to enforce the trust.

With the number and size of charitable trusts increasing, the Legislature set about to authorize by statute the intervention of the Attorney General, and to make him a necessary party to suits or judicial proceedings involving charitable trusts as set out in the Act, and to define his powers to settle litigation. The title to the Act [Article 4412a] was, "An Act providing that the Attorney General shall be a necessary party to certain judicial proceedings, settlements and compromise agreements affecting charitable trusts, and authorizing settlements with or without the intervention of a court," excepting pending litigation, providing a severance clause, and declaring an emergency. Section 6 of the Act casts further light on the legislative purpose:

"It is the purpose of this Article to resolve and clarify what is thought by some to be uncertainties existing at common law with respect to the subject matter hereof. Nothing contained herein, however, shall ever be construed, deemed or held to be in limitation of the common law powers and duties of the Attorney General."

The emergency clause reads:

"The need for a clarification of possible uncertainties in existing law concerning the powers and duties of the Attorney General with respect to charitable trusts, creates an emergency * *." [Acts 56th Leg., R.S.1959, Ch. 115, p. 204]

With the narrow question now before us, it is necessary only to say that Article 4412a did not go to the extent of nullifying the general equity powers and jurisdiction of our courts as recognized in such cases as Pierce v. Weaver and Woods v. Bell, discussed above. True, under Article 4412a, the Attorney General must be made a party, and he is authorized to settle litigation involving charitable trusts. He is a necessary party; but the statute does not say that he is the preclusive party or the only party who can appeal. If it be assumed that Article 4412a gives him the power to direct how charitable trust cases shall be tried and appealed, his statement in this Court by amicus curiae brief and in his tendered motion for rehearing in the Court of Civil Appeals shows that he at least approved the appeal on behalf of intervenors Coffee et al.

If it be assumed that the courts can only act in these cases if the Attorney General is

a party, he was a party. Nothing has been done to sever him as a party. He was still a party in the Court of Civil Appeals though it be conceded that he lost his right of appeal. That court had jurisdiction of the subject matter of the suit. The line of cases illustrated by Woods v. Bell, discussed above, recognized that at least under certain circumstances, persons claiming to be beneficiaries had standing to appeal. Conceding the power of the Attorney General to control and settle the litigation so as to terminate cases, no such power was exercised here. To the contrary, the Attorney General wanted the case fully developed all the way, and he wanted the warring factions to carry the battle.

In a recent case in the Supreme Court of the United States, not cited by either party in this Court, an intervening party, who purported to represent a class of people, was successful in a suit involving a charitable trust. It is Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). In 1911, a Senator Bacon devised to the mayor and city council of Macon, Georgia, 100 acres in Macon as a park for white people only. The City maintained it for many years but then decided that it could not constitutionally continue to operate the park on a segregated basis. So Newton et al., representing the interests of Bacon, the settlor, brought a suit to remove the mayor and councilmen as trustees because they were refusing to carry out the trust as written, and to appoint new trustees. The City answered, asking for a construction of the will. Then the Rev. E. S. Evans et al. intervened, purporting to represent the Negroes of Macon [who were beneficiaries or potential beneficiaries]. Their position was that the City could not resign because this would constitute "state action" which would permit the park to get into private hands and remain segregated. The plaintiffs then amended to allege that the trust could not be carried out and that the property should revert to the heirs of Bacon. The City expressed its willingness to resign. The trial court permitted the intervention

of the Negro group, permitted the City to resign, appointed new trustees, and turned the park over to them. The Negro intervenors were the appellants in the Georgia Supreme Court which affirmed, and they were the Petitioners in the U.S. Supreme Court which reversed and decided the case in favor of the intervenors.

In the Georgia Supreme Court, 220 Ga. 280, 138 S.E.2d 573, the standing or justiciable interest of the Negro intervenors apparently was challenged; and that question must have been decided in favor of the intervenors because the Court took jurisdiction and affirmed. The Court stated that the doctrine of *cy pres* had not been raised, and it doubted that the intervenors had the standing [initially] to raise the issue. But the case was not one brought by the intervenors. As here, the case was brought by people having sufficient interest to invoke the power of the Court. The intervenors did the appealing, and successfully. The question of the standing of the intervenors disturbed the Supreme Court of the United States not at all. It never mentioned the question. A majority simply upheld the contentions of the intervenors.

A recent case by the Supreme Court of Minnesota states that while the possible beneficiary there did not have sufficient interest to intervene as a matter of right in a *cy pres* action, it indicated that such interventions would be permitted within the discretion of the trial court. Sister Elizabeth Kenny Foundation, Inc. v. National Foundation, 267 Minn. 352, 126 N.W.2d 640 (1964).

One final case strongly relied upon by Rice illustrates the narrowness of the point before us and the narrowness of our holding. It is Carroll v. City of Beaumont, 18 S.W.2d 813 (Tex.Civ.App.1929, writ refused). There a corporation conveyed property to the City as a public charitable trust. The City accepted the property and controlled it for many years. Then some stockholders of the granting corporation brought a suit against the City complaining

of the operation of the trust. They demanded an accounting and other relief. A plea in abatement was filed by the City, challenging the capacity of the plaintiffs to attack the public charitable trust. The plea in abatement was overruled. On appeal the court wrote, "The right of appellants to maintain this suit was challenged in the trial court by appellees by their plea in abatement. This plea was overruled. In this the court erred. As this holding disposes of the case, it is not necessary for us to discuss any of the other questions presented." 18 S.W.2d at 820. Therein lies the first distinguishing feature: no plea in abatement or other challenge was filed by Rice or anyone else to the intervention in the case at bar; and as mentioned, the point was not raised in the Court of Civil Appeals.

Next, in the *Carroll-Beaumont* case, the statement is made that the "subject-matter of the suit being a public charity, no final and conclusive settlement can be made, unless the state is represented * * *." The State was represented here.

Thirdly, the opinion says that only the Attorney General can bring an action to attack a public trust, with certain exceptions set out in the opinion. This point was conceded by the intervenors Coffee et al. at the outset. The policy behind the refusal to let others bring suit is to protect the trust and the trustees from harassment. Intervenors agree that they could not have instituted the suit. But the suit was instituted by Rice against the Attorney General, thus properly invoking the equity powers of the court.

Finally, one of the exceptions stated by the Court of Civil Appeals in the *Carroll* case was that the rule (requiring the Attorney General to bring the suit) would not apply "where the grantor or donor reserves some visitorial power or supervising authority in the instrument creating the trust, even when a public trust." In the trust indenture before us, Mr. Rice reserved during his lifetime the power to direct and control the investments of the Endowment Fund "and the management of the said Institute." Then Mr. Rice added a general power of visitation by the courts: "Said Institute when chartered, and in operation, shall be subject to the visitation of any Courts of Justice which now are, or hereafter may be thereunto empowered, for the purpose of preventing and redressing any mismanagement, waste or breach of trust." Thus Mr. Rice himself reserved, or attempted to reserve, in the trust indenture the general equitable powers of the courts to inquire into any breach of trust or mismanagement. There is no suggestion of any wrongdoing by any trustee; but it is the position of intervenors that the trustees have deviated, or desire to deviate, from the stated purpose of the trust indenture. Without here indicating any agreement or disagreement with intervenors' position on the merits, it is our opinion that the trust indenture did reserve the full power of the courts to "visit" or inquire into the conduct of the trust, assuming that authority of the court is properly invoked.

Under the record in this case, with Coffee et al. having been permitted to intervene in the trial court, and their intervention not having been challenged, for the purposes of determining justiciable interest we regard them as being in the same position as though they had been named defendants from the beginning. Suppose, for example, that the Trustees of Rice University had brought the suit and had named three defendants or groups of defendants: (1) the Attorney General; (2) Coffee et al., individually and as representatives of their class who favored the continuation of Rice University as provided in Rice's will; and (3) Bybee et al., individually and as representatives of the class who favored the changes desired by the Trustees. If the status of Coffee et al. and of Bybee et al. as defendants was unchallenged in the trial court, it would be our view that they would have the right to appeal. So here the power of the courts was invoked by Rice itself and the Attorney General was a party to the suit. The inter-

venors were permitted to come into the case without opposition and to assume the status of the fighting defendants. The place to have challenged their interest and their right to intervene was in the trial court.

We hold that the Court of Civil Appeals had jurisdiction of the subject matter of the appeal. The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to that court for a disposition of the appeal upon its merits.

SMITH, NORVELL and HAMILTON, JJ., dissent.

SMITH, Justice (dissenting).

I respectfully dissent. Rice University sought and secured equitable relief in the trial court under the doctrine of *cy pres* which has been available to trustees of public trusts for centuries, and such doctrine is specifically made available to trustees of public trusts by express provisions of Section 2,[1] Article 4412a, Vernon's Annotated Civil Statutes of Texas. Section 5[2] of the Article outlines the duties and responsibilities of the Attorney General in regard to any dispute, claim or controversy of a character described in Section 2 of Article 4412a. There is nothing in the act which even indicates that the Attorney General,

having been served with process and having made his appearance as a party, loses his status as a necessary party, as provided by statute, merely because members of the general public, who might be interested in subject matter of the lawsuit, see fit to intervene and align themselves on the side of the Attorney General. It is undisputed that the Attorney General did file an answer and actually participated in the trial of the case. While it is true that the attorneys for the intervenors (Petitioners in this Court) associated themselves with the Attorney General, nevertheless the Attorney General actively participated in the defense of the case.

The ultimate issues before the court were whether Rice University may charge reasonable tuition of its students; and whether Rice University must exclude otherwise qualified students solely because of the color of their skin. These issues, which were thoroughly litigated in the trial court between the Rice University and the Trustees and their allied intervenors on the one hand and the Attorney General and his allied intervenors on the other, arose because the trustees, in the exercise of their judgment, concluded to invoke the doctrine of *cy pres* through the courts in order to remove the restrictive features provided in the original indenture, dated May 13, 1891, and executed by William Marsh Rice and

1. "Sec. 2. For and on behalf of the interests of the general public of this state in such matters, the Attorney General shall be a necessary party to and shall be served with process, as hereinafter provided, in any suit or judicial proceeding, the object of which is:

"a. To terminate a charitable trust or to distribute its assets to other than charitable donees, or

"b. To depart from the objects of a charitable trust as the same are set forth in the instrument creating the trust, including any proceedings for the application of the doctrine of cy pres, or

"c. To construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust, or

"d. To contest or set aside the probate of an alleged will by the terms of

which any money, property or other thing of value is given, devised or bequeathed for charitable purposes."

2. "Sec. 5. Any dispute, claim or controversy of a character described in Section 2 of this Article, and affecting a charitable trust may be settled or compromised by agreement, with or without the intervention or approval of a court, provided, however, that no such compromise, settlement agreement, contract, or judgment shall be valid or binding unless the Attorney General is a party thereto and joins therein. The Attorney General is expressly authorized to join and enter into such compromises, settlement agreements, contracts, and judgments, as aforesaid, as in his judgment and discretion may be in the best interests of the public."

six other persons chosen by him and named as trustees by him.

This suit was tried before the court and a jury. The petitioners and the Attorney General closed the case without introducing any direct evidence. The respondents introduced all of the evidence and the petitioners cross-examined respondents' witnesses.

The court submitted special issues to a jury, and thereafter entered its judgment in favor of the trustees and among other things the judgment "ordered, adjudged and decreed, that William Marsh Rice University, and its trustees, now and hereafter, under the law, and notwithstanding the color and tuition restrictions in the indenture of 1891 and in the charter of William Marsh Rice University, may disregard such restrictions, and are no longer bound thereby, in the administration and operation of said University; and said trustees are hereby authorized and empowered to alter or amend the charter of said University, if they wish to do so, in order to reflect therein the provisions of this judgment eliminating the said two restrictions so as to render it practicable for the trustees to achieve the main purpose of William Marsh Rice, i. e., the devolpment of an educational institution of the first class."

All of the Attorneys, including Waggoner Carr, Attorney General, by Hawthorne Phillips, defendant, approved this judgment as to form except the attorneys for Petitioners, John B. Coffee and Val T. Billups, the allied intervenors of the Attorney General. These intervenors were the only persons dissatisfied with the judgment and the only persons who gave notice of appeal.

To further demonstrate that the Attorney General actively participated throughout the trial, I point out that Waggoner Carr, Attorney General, by his Assistant Attorney General, Hawthorne Phillips, joined the attorneys for Coffee and Billups, in approving their Bill of Exception to the action of the Trial Court in refusing to enter judgment decreeing that "the plaintiffs take nothing

by their suit and that all relief sought be denied."

Regardless of whether the Attorney General was in accord with the judgment, in toto, or whether he thought that the plaintiffs-respondents were entitled to some relief, and regardless of whether or not he felt that the judgment "went too far," the fact remains that the Attorney General, as the only defendant, did not appeal from the judgment entered by the trial court.

The conclusion is inescapable that the litigation ended in the trial court between all of the parties who had a justiciable interest therein, and the finality of the trial court judgment became certain when the Attorney General did not file a motion for a new trial or appeal from the judgment of the trial court. Since the statute makes the Attorney General a necessary party to litigation of this type, and since the Respondents made the Attorney General the sole party defendant, it naturally follows that private individuals have no legal right to maintain or direct the defense of the suit, nor do they have the power to substitute their judgment for that of the Attorney General in determining the question of whether or not to appeal from an adverse judgment rendered in the trial court. The Court takes the position that since the petitioners were permitted to intervene without their voluntary intervention being challenged, they are to be regarded as being in the same position as though they had been named defendants along with the Attorney General from the beginning. The fact remains that they were not named defendants. Therefore, these petitioners occupy the status, by their voluntary intervention, of being assistants to the only defendant, the Attorney General of Texas. It is wholly untenable to contend that, merely because no plea in abatement was filed, Coffee et al. became defendants with power to override the judgment of the Attorney General, the only real defendant in the case. Coffee et al. have no authority to displace the Attorney General in the exercise of his judg-

ment and decision not to appeal. See Maud v. Terrell, 109 Tex. 97, 200 S.W. 375 (1918); Staples v. State ex rel. King, 112 Tex. 61, 245 S.W. 639 (1922); State ex rel. Hancock et al. v. Ennis, Sheriff, Tex.Civ.App., 195 S.W.2d 151 (1946), wr. ref. N.R.E. While these cases grew out of quo warranto and mandamus proceedings, I contend that they are analogous on the particular question this Court has under consideration. For example, in the Ennis case, supra, the trial court granted the District Attorney's motion to dismiss ouster proceedings which had been instituted by the State of Texas acting by and through the duly elected and qualified District Attorney of the 36th Judicial District of Texas. The relators, who had joined in the ouster petition, resisted the motion to dismiss, excepted to the ruling of the court in granting the motion to dismiss, and carried the case to the Court of Civil Appeals as appellants. The paramount question presented by the appeal was: Did the District Attorney have the right or authority to control the course of the litigation, or did the private individuals, as original relators, have the right to prosecute the suit to final judgment in the appellate courts contrary to the desire of the District Attorney to discontinue the case? The issue was stated by the Court of Civil Appeals thusly: "But the issue here has reference to the asserted right of private individuals to maintain a suit which 'is emphatically a proceeding on the part of the State,' despite the action of a proper state official, the district attorney, in requesting a discontinuance."

In principle, the Court has the same issue here: Do these petitioners, Coffee et al., have the right or authority to appeal, and thereby control the litigation, between Rice University et al. and the Attorney General in concluding to not appeal from a judgment rendered adversely to his position? The Court in the Ennis case answered the question in the negative. It is my view that when the courts speak of "maintaining a suit" it is meant not only the filing of a suit, but the term is meant to include the right of appeal whether the appealing party be a plaintiff or a defendant who is dissatisfied with the judgment. Coffee et al. could not have legally filed this suit in the first instance, nor could they have defended this suit without the Attorney General being a party defendant. Granting that Coffee et al. intervened without objection, and granting further that they thereby attained a status in the lawsuit, the Attorney General being the only party defendant, the acts and services of Coffee et al. were rendered in subordination to the controlling authority of the Attorney General. This being true, the effort to appeal, contrary to the course taken by the Attorney General, was a nullity. Any judgment other than the one of dismissal by the Court of Civil Appeals in this case would have been a nullity. In the case of Akin Foundation v. Trustees for Preston Road Church of Christ, Dallas, Texas, Tex.Civ.App., 367 S.W.2d 351 (1963), no writ hist., the judgment and judgment rolls disclosed the absence of the Attorney General as a necessary party under Article 4412a, supra. The Akin Foundation was seeking a declaratory judgment without the Attorney General being made a party, as required by the statute. The Court, under the authority of Williams v. Steele, 101 Tex. 382, 108 S.W. 155 (1908) and McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957), exercised appellate jurisdiction to the extent of declaring the judgment invalid because of the absence of the Attorney General as a party. The case was reversed and remanded to the trial court with direction that The Akin Foundation have a reasonable time to effect the joinder of the Attorney General of Texas as a party to the suit. I refer to this case mainly to point out that while the Court of Civil Appeals correctly declined to pass upon the merits of the appeal in the Akin case, the Court of Civil Appeals in this case had no authority or jurisdiction to require the Attorney General to further "maintain the suit" by appeal.

The petitioners, Coffee and Billups, are in no position to challenge the Attorney Gen-

eral's decision to refrain from seeking a reversal of the judgment of the trial court by way of appeal. In fact these petitioners have failed to present any point or argument that the Attorney General's conduct in terminating the litigation was in violation of his statutory duty. This Court is concerned with a matter of jurisdiction, and not merely a question of the procedural rights of intervenors. The fact that no objection was registered by either party to the entry into the case by both groups of intervenors does not settle the jurisdictional question one way or the other. Certainly, the petitioners cannot successfully assert that merely because they intervened in the case without objection, they thereby became vested with all the rights of the Attorney General, including the right of appeal. Yet, they are here making just such argument. Their position is squarely in the teeth of Section 6[3] of Article 4412a, supra. The statute does not authorize the Attorney General to delegate the authority vested solely in him. The record reflects that Albert Jones, the First Assistant Attorney General during the trial, and his successor, Hawthorne Phillips, actively participated in the trial. Although the petitioners are to be commended for their zeal and their obviously valuable services in furnishing able counsel to aid the Attorney General, they have no legal authority to overrule the considered judgment of the Attorney General. They have no legal standing in the appellate courts. Even the Attorney General admits that he no longer has any standing in the appellate courts.

Another thing to be considered. The statute expressly authorizes the Attorney General to "join and enter into such compromises, settlement agreements, contracts, and judgments * * *, as in his judgment and discretion may be in the best interests of the public." If the Attorney General can settle cases without the benefit of a trial court judgment, why should he be prohibited from terminating litigation after a full and complete trial and entry of judgment in the trial court.

Another example of the fallacy of intervenors' position is this: Suppose Rice University had at some time during the proceedings decided to enter into a settlement agreement with the Attorney General and by the terms of such agreement, Rice University either dismissed the suit or a judgment was entered that Rice University take nothing, does anyone think for one minute that the intervenors, the group allied with Rice University, would have the right to break the settlement or maintain an appeal? Certainly not. Neither group of intervenors had standing to sue, consequently neither group had the right or authority to maintain an appeal. The right to appeal is determined by the same standard which determines the right of a party to initiate an action. The generally accepted rule is that "appellate courts do not decide cases where no actual controversy exists between the parties at the time of the hearing." City of West University Place v. Martin, 132 Tex. 354, 123 S.W.2d 638 (1939). There was no actual controversy between Coffee et al., and Rice University in the Court of Civil Appeals.

The petitioners-intervenors' attempted appeal to the Court of Civil Appeals complained primarily of the ruling of the trial court in denying an instructed verdict in their favor, and in denying them a judgment non obstante veredicto, and rendering judgment in favor of respondents based upon the application of the doctrine of *cy pres*. Only the Attorney General could appeal from such rulings. In the case of Duffey v. Cross, 175 S.W.2d 637 (Tex.Civ.App.1943, wr. ref. want of merit), the Court, in overruling Duffey's contention in regard to a

---

3. "Sec. 6. It is the purpose of this Article to resolve and clarify what is thought by some to be uncertainties existing at common law with respect to the subject matter hereof. Nothing contained herein, however, shall ever be construed, deemed or held to be in limitation of the common law powers and duties of the Attorney General."

judgment denying him a recovery over against Cross, said:

> "As to this * * * ruling it is only necessary to point out that Duffey had no justiciable interest in that controversy, since his rights were not in any way prejudiced by that ruling. Only the State could challenge that ruling and it has not appealed." See City of Chicago v. Chicago Rapid Transit Co., 284 U.S. 577, 52 S.Ct. 2, 76 L.Ed. 501 (1931).

The petitioners-intervenors rely upon the cases such as Gibson v. Richter, 97 S.W. 2d 351 (Tex.Civ.App.1936, no wr. hist.) and Metcalfe v. McCarty, 301 S.W.2d 263 (Tex. Civ.App.1957, no wr. hist.). These cases merely stand for the proposition that an intervenor, once permitted to intervene, may appeal the judgment of the trial court if, but only if, he has a justiciable interest in the subject matter and the judgment rendered is adverse to this interest. In the Metcalfe case, the intervenor had a monetary interest in the judgment. In the Gibson case, the Court merely said, by way of dictum, that an intervenor is permitted to appeal "from a judgment adverse to his interest."

The Court seems to rely upon such cases as Tunstall v. Wormley, 54 Tex. 476 (1881); Pierce v. Weaver, 65 Tex. 44 (1885); Woods v. Bell, 195 S.W. 902 (Tex.Civ.App. 1917, writ refused); and Inglish v. Johnson, 42 Tex.Civ.App. 118, 95 S.W. 558 (1906, writ refused) to support its construction of Article 4412a which is to the effect that Coffee et al. are not precluded from perfecting an appeal despite the action of the Attorney General in declining to appeal. My examination of these particular cases leads me to conclude that they have no application to the case at bar. Aside from the fact that the parties, under the circumstances of each case, had a special interest therein separate and apart from that of the general public in the charitable trust, these

cases, all decided before the enactment of Article 4412a, supra, were rendered obsolete after the passage of the Act by the Legislature. These particular cases are completely out of harmony with the manifest intention of the Legislature. The Legislature definitely fixed the control of litigation involving charitable trusts. Just as the Constitution of Texas lodged with the county and district attorneys the duty of representing the State in ouster proceedings, the Legislature by the enactment of Article 4412a definitely designated the Attorney General to act for the public and all classes of beneficiaries to charitable trusts in this State. By implication all others are excluded. Under the statute, which is absolutely controlling in any controversy involving the construction of the terms of a charitable trust, the Attorney General is clothed with the responsibility and authority for conducting litigation involving public trusts. In this proceeding for the application of the doctrine of *cy pres*, the Attorney General has discharged that responsibility. At least, this Court does not have before it the question of whether or not the Attorney General has discharged his responsibility.

The Court discusses other earlier cases which held that the Attorney General, not only had the right to intervene in a case where he had not been made a party, but that it was his duty to protect and enforce any trust which had been declared to be charitable. The force of the holdings in these cases,[4] aside from being in harmony with Article 4412a, lies in the fact that such holdings, no doubt, influenced the Legislature in placing the responsibility with the Attorney General. The Court's view in the present case, if adopted, will continue the uncertainty which existed because of conflict of authority prior to the enactment of Article 4412a, supra. In adopting this statute it is convincing that the Legislature intended to put to rest the troublesome questions raised in the past by

---

4. Allred v. Beggs, 125 Tex. 584, 84 S.W. 2d 223 (1935); Powers v. First National Bank of Corsicana, 138 Tex. 604,

161 S.W.2d 273 (1942); Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326 (1946).

persons of the same class, but with different views endeavoring to direct how a charitable trust should be administered.

Rice University and its trustees had the right pursuant to Article 4412a, supra, to file this suit against the Attorney General of Texas. The issues drawn between these parties were tried in the District Court to judgment and the Attorney General determined not to appeal. Therefore, the judgment having become final, the litigation ended then and there. Though petitioners and others intervened at the trial level, they had no standing to maintain this appeal. The opinion of the Court of Civil Appeals is correct and well supported by authority. I would affirm that Court's judgment rendered herein.

NORVELL and HAMILTON, JJ., join in this dissent.